PEOPLE v NEWMAN

Docket No. 48530. Submitted February 4, 1981, at Detroit.—Decided
   July 7, 1981. Leave to appeal denied, 412 Mich 890.
   Donald L. Newman was convicted of voluntary manslaughter,
   Wayne Circuit Court, Myron H. Wahls, J. He appeals. *Held:*
   The trial court erred in failing to instruct the jury ade-
   quately on the defendant's theory of accident so as to focus the
   jury's attention on that central issue. The case is remanded for
   entry of a judgment of conviction for involuntary manslaugh-
   ter.
   Reversed and remanded.
   BRONSON, P.J., dissented. He would hold that, absent a show-
   ing of manifest injustice, failure of a trial court adequately to
   instruct the jury on the defendant's theory of accident does not
   require reversal where the defendant did not raise an objection
   to the instruction during trial. He would affirm.

OPINION OF THE COURT

1. HOMICIDE — JURY INSTRUCTIONS — ACCIDENT.
   Failure of a trial court in a prosecution for first-degree murder to
   instruct the jury adequately on the defense of accident with
   regard to all of the lesser-included offenses where the theory of
   accidental homicide is central to the case, even in the absence
   of a request by the defendant for such an instruction, consti-
   tutes error requiring reversal.

DISSENT BY BRONSON, P.J.

2. HOMICIDE — JURY INSTRUCTIONS — EVIDENCE — VICTIM'S STATE OF
   MIND — RULES OF EVIDENCE.
   *Failure of a trial court in a prosecution for first-degree murder to*

REFERENCES FOR POINTS IN HEADNOTES
[1, 2, 6] 40 Am Jur 2d, Homicide §§ 483, 486.
   75 Am Jur 2d, Trial § 615.
[3] 29 Am Jur 2d, Evidence § 771.
[4] 29 Am Jur 2d, Evidence § 723.
[5] 29 Am Jur 2d, Evidence § 269.
[7] 21 Am Jur 2d, Criminal Law § 527.

*give a limiting instruction to the jury relative to properly admitted evidence reflecting on the state of mind of the victim where the defendant does not request the instruction and other evidence is presented as to the defendant's guilt constitutes, at most, harmless error (MRE 401, 803[3]).*

3. CRIMINAL LAW — DEMONSTRATIVE EVIDENCE — RULES OF EVI-
DENCE.

*Demonstrative evidence such as bloodstained clothing is admissible where it aids the finder of fact in reaching a conclusion on a material matter in issue (MRE 401).*

4. CRIMINAL LAW — RES GESTAE WITNESSES — PROSECUTING ATTOR-
NEYS — GOOD FAITH.

*An unendorsed, newly discovered, res gestae witness should be allowed to testify in rebuttal where a proper foundation is laid establishing the prosecutor's due diligence and good faith in attempting to uncover all potential res gestae witnesses.*

5. EVIDENCE — REBUTTAL EVIDENCE — CUMULATIVE EVIDENCE.

*Technically improper rebuttal testimony which is admitted into evidence does not constitute error requiring reversal where it is cumulative of other, properly admitted evidence.*

6. HOMICIDE — JURY INSTRUCTIONS — APPEAL — PRESERVING QUES-
TION.

*Error by a trial court in instructing the jury in a first-degree murder case on the defense theory of accident where the theory is central to the case does not require reversal on appeal where the defendant did not raise an objection during trial and there is no showing that the error resulted in manifest injustice.*

7. CRIMINAL LAW — SENTENCING.

*A trial court may consider evidence and testimony presented during trial in determining sentence.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Paul G. Bruno,* Assistant Prosecuting Attorney, for the people.

*Chari Grove,* Assistant State Appellate Defender, for defendant on appeal.

Before: BRONSON, P.J., and M. F. CAVANAGH and N. J. KAUFMAN, JJ.

PER CURIAM. Our brother BRONSON has made a very thorough summary of the facts of this case in his dissent.

We find the trial court's error in its failure to adequately instruct the jury on the theory of the defense of accident to be dispositive of this case. As was held by panels of this Court in *People v Morris,* 99 Mich App 98; 297 NW2d 623 (1980), and *People v Stanley Jones,* 69 Mich App 459; 245 NW2d 91 (1976), where the theory of accidental homicide is central in the defendant's trial, even where the defendant failed to request an instruction on that defense, it is error requiring reversal for the trial court to fail to adequately instruct the jury on the defense so as to focus the jury's attention on that central issue.

Defendant here advanced the theory of accident throughout his defense. The trial court instructed the jury on the defense of accident as it pertained to first- and second-degree murder but not as it pertained to voluntary manslaughter. Therefore, it was possible that even though the jury was instructed to consider the court's instructions as a whole it could have concluded that the defense of accident applied only to the charges of first- and second-degree murder and not to voluntary manslaughter.

We cannot say with certainty that if the jury had been instructed that accident was a defense to voluntary manslaughter it would have convicted defendant of that crime. We reverse defendant's conviction of voluntary manslaughter and remand for entry of judgment of conviction of involuntary manslaughter. We grant the prosecution the op-

tion of vacating that conviction and seeking a new trial in this case.

As to the remaining issues raised on appeal by this defendant, we find no merit thereto and concur in the disposition accorded them by Judge BRONSON.

Reversed and remanded in accordance with this opinion.

BRONSON, P.J. *(dissenting)*. Defendant was charged in the Wayne County Circuit Court with premeditated first-degree murder. MCL 750.316; MSA 28.548. Following a jury trial, he was convicted of voluntary manslaughter. MCL 750.321; MSA 28.553. Defendant was sentenced to a term of from 10 to 15 years' imprisonment. He now appeals as of right.

The charges arose out of an incident occurring in the early morning hours of May 23, 1979, in which an automobile driven by defendant struck and killed "Junior" Caudill. The incident occurred on Jefferson Avenue in the City of Ecorse in front of the Stonehenge Bar.

The prosecution offered the following evidence. Debra Evans testified that at approximately 1:30 a.m. on May 23, 1979, she was working in the Mecca Bar across the street from the Stonehenge. She heard the sound of squealing tires and looked outside to see Caudill walking across the street to the Mecca and then jumping back to get out of the way of defendant's car. Caudill came into the Mecca for a few minutes and, upon leaving, said to Ms. Evans, "It's been nice knowing you. I'll see you in heaven."

Ms. Evans stated that, at approximately 2:15 a.m., defendant approached her at the Mecca Bar and asked her where Caudill was. Evans merely

indicated that Caudill was not there. Subsequently, defendant returned to his automobile which was parked down the street.

Cassandra Lee Girvin stated that on the night in question she was working as a barmaid at the Stonehenge. Sometime around 1:50 a.m., Caudill entered the tavern and seemed frightened. He told Ms. Girvin that defendant had just tried to kill him by running him down. Girvin asked Caudill whether it could have been just an accident. He answered in the negative, indicating that defendant already had told another person of his intent to kill him.

Joan Caudill, the victim's wife, testified that on May 15, 1979, defendant told her he was going to kill Caudill because he believed Caudill was seeing his wife.

Four witnesses who actually saw defendant's automobile run over Caudill gave varying accounts of their observations. Kathleen Ptak testified that Caudill was crossing Jefferson when defendant's car approached. Caudill was chasing the vehicle, trying to grab the door on the driver's side. The car was spinning in a circle. Caudill then started walking back toward Ptak and was hit "straight on" by defendant. Ms. Ptak did not see defendant put the car in reverse or back up. In her opinion, defendant was driving faster than 25 miles per hour at the time he hit Caudill.

Ronald Wayne Robeson testified that he also saw the car spinning. Mr. Robeson then saw the car stop, go into reverse, and back over Caudill.

Deborah Alda King also indicated that the automobile spun in a circle. While this was happening, Caudill bounced off the front of the car and lay on the ground. Defendant's car then progressed over Caudill's body. Subsequently, defendant stopped,

put the car into reverse, and then went over the same spot.

Donald Ray Carroll testified that Caudill took hold of the car and that defendant rocked back and forth until Caudill was thrown loose. Mr. Carroll further stated that Caudill then walked to the sidewalk and defendant's car turned in a circle, climbed over the curb, and struck the victim.

Defendant testified in his own behalf. He stated that at approximately 6:30 p.m. on May 22, 1979, he went to the Stonehenge Bar. At this time, Caudill approached his car, broke two beer bottles on the vehicle, and told defendant that he was going to kill him. Defendant then left the tavern with a friend. They went to defendant's apartment and then to another bar where they remained until approximately 2:30 a.m. Defendant indicated that he then returned to the Stonehenge, looking for his wife. At this time, Caudill again started chasing defendant's car. Defendant tried to drive away but, in an attempt to avoid a collision with another car, spun his automobile around. Caudill ran in front of the car and was accidentally hit.

Other evidence adduced will be discussed where relevant to specific issues.

I

Defendant's first allegation of error requiring reversal concerns an incident in which he contends that hearsay testimony was improperly allowed to come before the jury. The following question and answer were taken over defense counsel's objection:

"*Q. [By Mr. Seller]:* What did you say to him and what did he say to you?

"*A.* Ivory Caudill came in just at last call in the back door, and he sat down. And I was cleaning up the grill, and he said, 'Sandy, I've got to talk to you.'

"And I said—we called him Junior. I said, 'Junior, what's the matter?'

"He said, 'I've got to talk to you.'

"I said, 'Okay. Wait 'til I finish my last call and my work here, and I'll talk to you.'

"So I finished serving my customers and I finished cleaning. I said, 'Okay, what do you want to talk about?'

"He said to me, he said, 'Sandy'—and his exact words —he said, 'do you know what that son of a bitch—'

"And I said, 'Who?'

"He said, 'Donny Newman and John D. tried to do to me just now?'

"I said, 'When?'

"He said, 'Just a little while ago.'

"I said, 'What's that?'

"He said, 'He tried to run me over.'

"I said, 'Oh, you're kidding.'

"He said, 'No.' He said, 'Donny Newman and John D. just now tried to run me over.' He said, 'He is trying to kill me.'

"I said, 'You're kidding.' I says, 'Maybe it was just an accident.'

"He said, 'No.' He said he had already—'He's already been over. He told Joann he's going to kill me.'

"*The Court:* That is too much.

"*Mr. Seller:* All right, sorry."

The trial court ruled that the answer was properly admitted as reflecting on the deceased's state of mind pursuant to MRE 803(3). Defendant concedes that facially the rule seems to allow the testimony in controversy. He argues, however, that in *People v White,* 401 Mich 482; 257 NW2d 912 (1977), the Michigan Supreme Court formulated a threshold test which must be passed prior to the admission of this variety of testimony and that

here the requirements of this test were not satisfied. I agree with defendant that the Supreme Court did mandate that evidence admitted pursuant to the state of mind exception must first pass a threshold requirement. However, the requirement imposed in *White* is merely that the victim's state of mind be in issue, *i.e.*, is relevant to a determination of defendant's guilt. This same threshold requirement is always a condition precedent to the admissibility of any piece of evidence pursuant to MRE 401. The Court in *White* specifically held that a victim's state of mind is in issue where the defense asserted is accident. *Id.*, 504. This is the defense pursued by defendant in this case. The state of mind evidence was deemed inadmissible in *White* because the prosecution's theory was that the killing constituted a felony murder. I agree with the trial court that on the facts of this case MRE 803(3) was properly invoked to allow the admission of the testimony.

Defendant argues in the alternative, however, that even if the evidence was properly admitted reversal is required since the trial court failed to give a limiting instruction on the permissible use which the jury could make of the testimony. In *White, supra,* 506, the Supreme Court stated that a proper limiting instruction should be given when state of mind evidence is admitted. Here, however, no limiting instruction was requested. MRE 105 imposes on the trial court the duty to give a limiting instruction only where requested by a party. See, also, *People v Hicks,* 70 Mich App 430, 437-438; 245 NW2d 778 (1976), and cases cited therein. Nonetheless, if the failure to give a limiting instruction resulted in manifest injustice, we would not hesitate to reverse. As the Court in *White, supra,* 503-504, pointed out, even when properly instructed on a piece of evidence's limited

admissibility, a jury is unlikely to comply with the parameters set by the instruction. Given this fact and given the victim's wife's testimony that defendant had threatened to kill Caudill—testimony whose admissibility is in no way challenged on appeal—I find the failure to give the limiting instruction to be at most harmless error.

## II

Defendant next asserts that the trial court abused its discretion and committed error requiring reversal by admitting the victim's bloodstained garments into evidence. Defense counsel objected to the admission of the clothes on the basis that they lacked probative value, were highly inflammatory, and because the clothing was not in the same condition in which it had been at the time of the incident.

Demonstrative evidence such as bloodstained clothing is admissible if it aids the fact-finder in reaching a conclusion on a material matter in issue. MRE 401, *People v Becker,* 300 Mich 562, 565; 2 NW2d 503 (1942), *People v Ingram,* 36 Mich App 160, 162; 193 NW2d 342 (1971). The prosecution argues that the clothing was relevant to show defendant's intent and that its condition was more consistent with a finding that the victim had been killed intentionally as opposed to accidentally. I disagree. All of the witnesses, including defendant, gave similar accounts concerning the physical facts of the killing. If the killing occurred accidentally as portrayed by defendant's version of the events in issue, the condition of the clothing was not any more or less consistent with intentional homicide or accident. Defendant did not assert that he slammed on the brakes to avoid hitting

the victim or that he was traveling very slowly so that the condition of the clothing might provide some slight evidence rebutting his story and show an intent to kill.[1]

Despite my conclusion that the clothing should not have been admitted, I am convinced that the error was harmless. The trial court specifically determined that the clothing was neither gruesome nor inflammatory. Moreover, it would have been as obvious to the jurors as it is to me that the condition of the clothing would not be inconsistent with defendant's version of the events in issue.

## III

The next contention on appeal is that the trial court erred in allowing one Janice Graham to testify on rebuttal. Defendant argues that Ms. Graham was an unendorsed res gestae witness whose testimony belonged in the prosecution's case in chief.

The prosecution, on appeal, concedes that Ms. Graham was an unendorsed res gestae witness. It contends, however, that her existence was not uncovered until some time during the presentation of the defense case. The gist of Graham's testimony was that at approximately 1:30 or 1:45 a.m. on the date of the incident she and her husband saw defendant in his car and that he asked

---

[1] I recognize that the prosecutor may not have been aware of what defendant's testimony would be until he actually took the stand. However, in light of defense counsel's objection on relevancy grounds, the proper course would have been for the trial court to deny admission of the clothing and, if it became apparent following defendant's testimony that the condition of the garments was inconsistent with the accident theory presented, reconsider allowing the physical introduction of the garb in rebuttal. Upon a determination that the clothing was relevant, however, the trial court still should weigh the prejudicial affect of the clothing against its probative value pursuant to MRE 403.

whether they had seen Caudill. There is no doubt that this testimony properly belonged in the prosecution's case in chief.

The question with which we are presented is—in light of the prosecution's assertions concerning the late discovery of the witness—was it proper to allow her testimony in rebuttal? In my opinion, where a proper foundation is laid establishing the prosecutor's due diligence and good faith in attempting to uncover all potential res gestae witnesses, a later discovered res gestae witness may be allowed to testify in rebuttal.[2] In such circumstances, good cause to alter the normal order of proof is shown. *People v Quick,* 58 Mich 321; 25 NW 302 (1885).

In *People v Rosemary Gibson,* 71 Mich App 543, 548-551; 248 NW2d 613 (1976), *lv den* 400 Mich 854 (1977), this same problem arose, albeit on slightly different facts. In *Gibson,* the prosecutor informed the court of the newly discovered res gestae witness prior to calling her to testify. In the instant case, ther prosecutor merely called her as a rebuttal witness. I believe that *Gibson* suggests the proper approach for prosecutors to follow when confronted with such a problem. Lengthy and acrimonious debate about the propriety of the action can be eliminated—both at trial and on appeal—if the prosecutor first informs the trial court of the problem. If defense counsel desires to challenge the prosecutor's good faith or diligence in his actions relative to the witness, this can all be handled outside of the jury's presence.[3]

---

[2] Any such admission of a later discovered res gestae witness's testimony is hinged on the right of the defense counsel to obtain time to interview the witness if desired and to obtain witnesses who will rebut the newly discovered witness's testimony if such witnesses may reasonably be found to exist by the trial court.

[3] This avoids the problem which might arise if defense counsel objects to the testimony midway through the examination of the

Despite the foregoing concerning what should have been done, no reversible error was caused by what happened in this case. When Ms. Graham gave her testimony, which properly belonged in the prosecution's case in chief, there was no objection, suggesting that defense counsel was not bothered by what had happened. Furthermore, the testimony was merely a less damaging account than that given by Joan Caudill, showing that defendant was looking for the victim near the time of the incident. Ms. Caudill had indicated that defendant told her to "tell the son of a bitch [the victim] I'm going to kill him". Where technically improper rebuttal testimony is admitted into evidence, reversal is unwarranted where this testimony is cumulative of other, properly admitted testimony. *People v Meadows,* 80 Mich App 680, 687; 263 NW2d 903 (1977).

## IV

The next claim on appeal concerns alleged instructional error. Following his instructions on first- and second-degree murder, the trial judge charged:

"One of the defenses raised in this matter by the defense is that the death of Mr. Caudill occurred as a result of the accident, and that for this reason the defendant is not guilty of the crime charged. If the defendant did not intend to kill or did not act with

recently discovered witness. In such circumstances, if the trial court then concludes that the witness was not properly called, the jury must be informed to disregard evidence which it has already heard. Moreover, the jurors' tendency would be to conclude that the defendant was using legal technicalities to prevent them from hearing relevant evidence and to draw an adverse inference concerning defendant's innocence from this fact. If the witness is not properly called, the prosecution has no right to have the jurors make this type of inference.

knowledge of the probable consequences of his act, then he is not guilty of the crime of murder."

This instruction was not repeated in relation to the crime of voluntary manslaughter, and it is this fact which the majority holds entitles defendant to reversal of his conviction.[4] I disagree.

There was no objection to the instructions on accident as given. Thus, absent a showing that the alleged error resulted in manifest injustice, no reversal is warranted on this basis. *People v Alcala,* 396 Mich 99; 237 NW2d 475 (1976), *People v Jackson,* 77 Mich App 392, 395; 258 NW2d 89 (1977), *lv den* 402 Mich 830 (1977).

In light of the Supreme Court holding in *People v Frederick Lester,* 406 Mich 252; 277 NW2d 633 (1979), this issue is close. Ultimately, however, I am persuaded that reversal should not be forthcoming on this basis.

In *Lester,* the trial court refused to charge the jury on accident as a defense to murder following a proper request by counsel. An examination of the facts appearing in this Court's opinion in *People v Frederick Lester,* 78 Mich App 21, 35; 259 NW2d 370 (1977), reveals that the jury was also charged on voluntary manslaughter and intentional aiming of a firearm with death resulting. However, the jury was not instructed on lesser offenses which it might find defendant guilty of if convinced that the killing was accidental. Here, however, the jury also had the option of convicting defendant of involuntary manslaughter (characterized by the court's instructions as a death result-

---

[4] Defendant actually contends that accident would be a defense to involuntary manslaughter and negligent homicide as well as voluntary manslaughter. This argument makes no sense since the gravamen of both these offenses is an accidental killing. *Cf. People v Jones,* 76 Mich App 601; 257 NW2d 185 (1977).

ing from defendant's gross negligence) and negligent homicide (characterized by the court as carelessness or ordinary negligence resulting in death from a motor vehicle). Thus, if the jury actually believed that the killing was accidental it was within its power to convict defendant of a crime obviously consistent with this collective belief.[5] The trial court's instructions clearly informed the jurors that voluntary manslaughter was a species of intentional killing reduced in degree because of the defendant's mental or emotional excitement.

Defendant's contention that the instructional problems cannot be considered harmless in light of the fact that he was found not guilty of murder in any degree, and accident was specifically explained to be a defense to these crimes, is not without merit. However, in light of the very strong evidence against defendant indicating that the killing was intentional, given that the jury could have returned possible verdicts consistent with the accident theory, and given that manslaughter was properly characterized as a variety of intentional killing, I am convinced that the jury's verdict would not have been different had accident instructions been explicitly tied to the voluntary manslaughter charge.[6] In accordance with the doctrine of harmless error embodied in both GCR 1963, 529.1 and MCL 769.26; MSA 28.1096, I would decline to reverse on this basis.

---

[5] In this case, I am able to say with certainty that the accidental killing charges—involuntary manslaughter and negligent homicide—were considered seriously by the jury. During the deliberations, the jury requested further instruction on the difference between first-degree murder, voluntary manslaughter, involuntary manslaughter, and negligent homicide. After receiving further instruction on these possible verdicts the jury found voluntary manslaughter to be the appropriate result in less than one hour.

[6] It is possible that appellate counsel anticipated this result and that this fact explains the assertion alluded to in footnote 4 that accident also would be a defense to voluntary manslaughter and negligent homicide.

## V

The last problem with which we are confronted on appeal is whether the trial court's statement at the time of sentencing—that it believed that the evidence of premeditation adduced by the prosecution was not seriously challenged by the defendant —entitles him to a remand for resentencing. Defendant argues that this statement reveals an improper, independent conclusion by the court that he actually was guilty of first-degree murder. As such, defendant maintains that he was sentenced on the basis of a crime which he did not commit.

The trial court is entitled to consider the evidence and testimony presented during the course of trial in determining what sentence to impose. *United States v Grayson,* 438 US 41; 98 S Ct 2610; 57 L Ed 2d 582 (1978). In *People v Morris,* 99 Mich App 98, 101-102; 297 NW2d 623 (1980) this Court held that where a defendant withdrew her guilty plea and subsequently was given a greater sentence than that which she would otherwise have received pursuant to the bargain, absent proof that the harsher punishment was a penalty for withdrawal of the plea as opposed to being based on facts which developed during trial, no remand for resentencing would be permitted. *Morris* implicitly recognizes the inherent propriety of a trial court's imposing sentence based on what it has learned of the incident during the course of the proceedings.

Defendant relies primarily on *People v Grimmett,* 388 Mich 590, 608; 202 NW2d 278 (1972), for the proposition that resentencing is required in this case. However, *Grimmett* involved a trial court's independent conclusion that defendant had

committed a murder for which he was not on trial.
The Supreme Court held that it was improper for
the trial court to assume defendant to be guilty of
the murder at the time of sentencing him on a
separate assault charge. *Grimmett* involved the
trial court's consideration of information received
both outside of the trial and the presentence re-
port. Such is not the case here, where the trial
court specifically stated that the testimony it
heard was a factor in determining the sentence
imposed.

I would affirm.