## PEOPLE v MAZZIE

Docket No. 67670. Submitted January 3, 1984, at Grand Rapids.—
Decided September 4, 1984.

John P. Mazzie was charged with premeditated murder, felony
murder and kidnapping. Pursuant to a plea agreement, defen-
dant pled guilty but mentally ill to murder in the second
degree, Recorder's Court of Detroit, Robert L. Evans, J. The
prosecution dismissed the premeditated murder, felony murder
and kidnapping charges. At the sentencing hearing, defendant
indicated that he and the victim, a 14-year-old paperboy, had a
hassle and were fighting and that he had strangled the boy.
Judge Evans sentenced defendant to a prison term of from 25
to 50 years. Defendant was granted a new trial on the basis of
the failure of the trial court to fully inform him at the plea
proceeding in accordance with the mandate of the court rule
governing guilty pleas. At his new trial, which was before a
jury, defendant raised the defense of insanity. The trial judge
at this second trial, Leonard Townsend, J., instructed the jury
that to acquit by reason of insanity they must find defendant to
be mentally ill such that he could not appreciate that his acts

REFERENCES FOR POINTS IN HEADNOTES

[1, 7] 21 Am Jur 2d, Criminal Law § 56 et seq.
　Modern status of test of criminal responsibility—federal cases. 56
　　ALR Fed 326.
　Modern status of test of criminal responsibility—state cases. 9
　　ALR4th 526.
[2] 21 Am Jur 2d, Criminal Law §§ 271, 278.
　Due process as violated by successive state criminal trials for single
　　offense, or for multiple offenses of the same character committed
　　simultaneously. 2 L Ed 2d 2020.
[3-5] 21 Am Jur 2d, Criminal Law § 314.
　Retrial on greater offense following reversal of plea-based convic-
　　tion of lesser offense. 14 ALR4th 970.
　Propriety of increased punishment on new trial for same offense. 12
　　ALR3d 978.
[6] 21 Am Jur 2d, Criminal Law § 247.
　Plea of guilty as basis of claim of double jeopardy in attempted
　　subsequent prosecution for same offense. 75 ALR2d 683.

were wrong and that he could not conform his conduct to the requirements of the law. The jury was also instructed that, if it found defendant guilty and mentally ill but not insane, it should return a guilty but mentally ill verdict. The jury returned verdicts of guilty as to both the second-degree murder count and the kidnapping count. Judge Townsend sentenced defendant to 75 to 150 years imprisonment on the murder count and life imprisonment on the kidnapping count, finding that the increased sentences were justified because he had heard the testimony as to the brutal nature of the acts that defendant had committed, information which Judge Evans had not known when he imposed sentence after the plea-based conviction. Defendant appealed. *Held:*

1. While it was error for the trial court to instruct the jury that legal insanity may be found when a mentally ill person cannot appreciate that his acts are wrong and cannot conform his conduct to the requirements of the law since legal insanity must be found if either of those conditions exist, that error does not mandate reversal. The trial court clearly instructed the jury that insanity requires a finding that the person is mentally ill and that, if the person was mentally ill but not insane and was guilty of the crime, a verdict of guilty but mentally ill must be returned. Since the jury returned straight verdicts of guilty, it is clear that the jury found that defendant was not mentally ill. Accordingly, the error in the insanity instruction was harmless error, since the jury failed to find the condition precedent for insanity, *i.e.,* mental illness.

2. It was error to retry defendant on the kidnapping charge after the prosecutor had dismissed that charge as a result of the guilty but mentally ill plea to second-degree murder. Accordingly, the conviction and sentence for kidnapping is vacated.

3. A trial court, on conviction of a criminal defendant after a retrial, may justify a harsher sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceeding. A subsequent event includes additional evidence about the nature of the defendant's criminal act which comes to the attention of the trial court during the retrial and which was unknown to the trial court at the time the original sentence was imposed. Since the trial court indicated that the harsher sentence was based upon evidence of the brutal nature of the events which led to the victim's death, information which was unknown to the judge who sentenced defendant after the guilty plea, and since it is clear that the

harsher sentence was not the result of vindictiveness, the imposition of the harsher sentence after retrial was not error.

Affirmed in part; reversed in part.

R. B. Burns, P.J., dissented. He would hold that a more severe sentence may only be imposed after a retrial where there has been identifiable conduct of the defendant which occurred after the first sentence was imposed. He would further hold that the erroneous instruction on insanity cannot be deemed to be harmless error. He would vacate the kidnapping conviction and sentence and would reverse and remand for a new trial as to the second-degree murder count.

### Opinion of the Court

1. Criminal Law — Insanity — Jury Instructions.

It is error for a trial court to instruct a jury that to acquit by reason of insanity they must find that the accused could not appreciate that his acts were wrong and could not conform his conduct to the requirements of the law, since legal insanity must be found where either of those conditions exists; such an erroneous instruction does not require reversal where the judge also instructs the jury that insanity requires a finding that the accused is mentally ill and that, if the jury finds that the accused is not insane but is guilty and mentally ill, they must return a guilty but mentally ill verdict and the jury returns a straight guilty verdict, since under those circumstances it is clear that the jury found that the accused was not mentally ill and, accordingly, the erroneous insanity instruction was harmless error (MCL 768.21a[1]; MSA 1044[1][1]).

2. Criminal Law — Guilty Pleas — Higher Offense.

The accused, as to any plea of guilty entered prior to March 1, 1984, and as to which the prosecution has determined that the ends of justice would be served by a plea of guilty to any charge arising out of a single transaction, shall not thereafter be called upon to answer to any other charge that arises out of the same transaction which will either subject him to a higher penalty or cause him to meet any additional elements of proof.

3. Criminal Law — Sentencing — Resentencing — Harsher Sentence.

A trial court, after retrial and conviction of a criminal defendant who had successfully sought and secured a new trial, may justify a harsher sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings; the acquisition of information about

the exact nature of the defendant's criminal acts which comes to the attention of the court during the presentation of the evidence on retrial and which was not known by the court at the time the original sentence was imposed is a relevant event that occurred subsequent to the original sentencing proceedings and may justify an increased sentence after retrial.

Dissent by R. B. Burns, P.J.

4. Criminal Law — Sentencing — Resentencing — Harsher Sentence.

Identifiable conduct of the defendant upon which a resentencing judge relies in imposing a harsher sentence, after the defendant has had his first conviction set aside and has been reconvicted, must have occurred after the first sentencing.

5. Criminal Law — Sentencing — Resentencing — Harsher Sentence.

Imposition of a harsher sentence upon reconviction following defendant's successful appeal is impermissible where the record of the second sentencing does not disclose objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

6. Criminal Law — Guilty Pleas — Higher Offense.

The accused, once the prosecution has determined that the ends of justice would be served by a plea of guilty to any charge arising out of a single transaction, shall not thereafter be called upon to answer to any other charge that arises out of the same transaction which will either subject him to a higher penalty or cause him to meet any additional elements of proof.

7. Criminal Law — Insanity — Jury Instructions.

It is error for a trial court to instruct a jury that to acquit by reason of insanity they must find that the accused could not appreciate that his acts were wrong and could not conform his conduct to the requirements of the law, since legal insanity exists where either of those conditions exists; the giving of such an erroneous instruction cannot be deemed to be harmless error where expert witnesses have testified in support of the defendant's insanity defense (MCL 768.21a[1]; MSA 1044[1][1]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Dep-

uty Chief, Civil and Appeals, and *Carolyn Schmidt,* Assistant Prosecuting Attorney, for the people.

*Robert E. Slameka,* for defendant on appeal.

Before: R. B. Burns, P.J., and V. J. Brennan and J. T. Kallman,* JJ.

J. T. Kallman, J. Defendant was charged with premeditated murder, felony murder, and kidnapping. MCL 750.316; MSA 28.548 and MCL 750.349; MSA 28.581. He pled guilty but mentally ill to murder in the second degree, MCL 750.317; MSA 28.549, and was sentenced to a term of from 25 to 50 years in prison pursuant to a sentence bargain. The prosecution, as part of the bargain, dismissed the premeditated murder, felony murder and kidnapping counts. Defendant filed in August, 1981, a motion for leave to file a delayed motion for a new trial, alleging that the trial court did not comply with GCR 1963, 785.7 in several particulars. In October, 1981, defendant was granted a new trial. At his new trial, conducted before a jury, defendant was convicted of second-degree murder and kidnapping and was sentenced by a different judge to 75 to 150 years imprisonment on the second-degree murder count and life imprisonment on the kidnapping count. Defendant now appeals as of right.

On appeal, defendant raises four issues.

Defendant first contends that the trial court's instructions on legal insanity were erroneous and reversal is mandated. As there was no objection to this instruction, reversal on this basis is precluded absent a showing of manifest injustice. *People v*

* Circuit judge, sitting on the Court of Appeals by assignment.

*Gasco,* 119 Mich App 143, 145-146; 326 NW2d 397 (1982).

In this case, the trial court charged the jury as follows:

"Mental illness is a substantial disorder of thought or mood which significantly affects a person's judgment, his behavior and his ability to recognize reality and his ability to conform with the ordinary demands of ordinary life. That is mental illness. It is a substantial disorder of thought or mood which affects the person's behavior and judgment and his ability to recognize reality and the demands of ordinary life. That is mental illness.

"Now legal insanity means that because a person is mentally ill, he cannot appreciate that the acts which he is doing are wrong and that he cannot conform his conduct to the requirements of the law. Now there are two things that are required for mental,—there are two things that are required for legal insanity. The two things are that the person, because of mental illness, cannot appreciate that the acts that he is doing are wrong. In addition to that, knowing that the act is wrong, he cannot help himself, he cannot conform his conduct to the requirements of the law."

The trial judge's instruction was erroneous in that it allowed the jury to acquit by reason of insanity only if it concluded that defendant (1) could not appreciate that his acts were wrong *and* (2) could not conform his conduct to the requirements of the law. MCL 768.21a; MSA 28.1044(1). In fact, if defendant could not appreciate the wrongfulness of his acts *or* could not conform his conduct to the requirements of the law, the statute requires that defendant be acquitted by reason of insanity.

Nonetheless, because the trial court correctly instructed the jury that, if it found defendant to be mentally ill but not insane, its verdict "should be

guilty but mentally ill" and that defendant could not be legally insane without also being mentally ill, the erroneous insanity instruction does not require reversal. Here, the court's instruction unequivocally directed the jury that a finding of mental illness short of insanity should result in a verdict of guilty but mentally ill. This case is thus controlled by *People v Crawford,* 89 Mich App 30, 36; 279 NW2d 560 (1979). There, this Court noted that, pursuant to MCL 768.21a(1); MSA 28.1044(1)(1), before a defendant can be found legally insane, he would have to be found mentally ill. In *Crawford,* as here, the trial court's instructions precluded a straight "guilty" verdict if the jury found defendant to be mentally ill. Here, as in *Crawford,* the erroneous instruction on legal insanity was harmless as defendant was not found to be mentally ill.[1]

Defendant contends that there was not sufficient evidence presented at trial to support his convic-

---

[1] *People v Gasco,* 119 Mich App 143; 326 NW2d 397 (1982), *lv den* 414 Mich 951 (1982), relied upon by Judge Burns, is factually inapposite to this case. Unlike this case and *Crawford,* in *Gasco* the trial judge told the jurors that if they found the defendant to be mentally ill, but not insane, they *might* return a verdict of guilty but mentally ill, 119 Mich App 146. This instruction implied that the jury had discretion to find the defendant "guilty" or *"guilty but mentally ill",* if it found that the defendant was mentally ill at the time of the crime. Thus, in *Gasco,* it was possible for the jury to find defendant "guilty" even though under proper instructions he would have been acquitted by reason of insanity, *e.g.,* the *Gasco* jury could have believed that the defendant could not conform his conduct to the requirements of the law but that he could appreciate that his acts were wrong and therefore concluded that it could not acquit on the basis of insanity under the instructions as given and yet found the defendant guilty rather than "guilty but mentally ill" because the lower court's instruction did not obligate the jury to find the defendant "guilty but mentally ill" if the defendant suffered mental illness. In this case, then, *Gasco* would have required reversal only had the defendant been found "guilty but mentally ill". Because the straight "guilty" verdict showed that the jury did not believe that the defendant was "mentally ill", a prerequisite to a finding of legal insanity, the erroneous instruction did not result in manifest injustice.

tion of kidnapping. In our opinion, there was sufficient evidence to support the conviction.

Next, defendant claims that the trial court erred in permitting the reinstatement of a kidnapping charge after it had been dismissed pursuant to a plea agreement. We agree.

In *People v McMiller,* 389 Mich 425, 431; 208 NW2d 451 (1973), the Court stated:

> "As we have seen, for *policy reasons* we forbid adversary procedure to expose a person to conviction for a higher offense when the independent fact finder has chosen to find him guilty of a lesser offense." (Emphasis in original.)

In *Mikowski v Grand Traverse County Sheriff,* 52 Mich App 66, 70; 216 NW2d 603 (1974), this Court stated:

> "While the Court in *McMiller* did, indeed, use the terms 'higher offense' and 'lesser offense', we think the Court in using those terms was not speaking only of the possible penalty which could be imposed. The public policy enunciated in *McMiller* was that once the prosecutor has determined that the ends of justice would be served by a plea to any charge arising out of a single transaction, the accused shall not thereafter be called upon to answer to any other charge that arises out of that transaction which will either subject him to a higher penalty or cause him to meet any additional elements of proof. In fact the Court explicitly indicated that the accused shall be 'tried on the charge to which the plea was offered'."

On the basis of the rule adopted in *McMiller* and *Mikowski,* the defendant's kidnapping conviction must be set aside. GCR 1963, 785.7(7)(d) changes the *McMiller* rule only for convictions

entered on or after March 1, 1984; thus, the new subrule is inapplicable here.

Finally the defendant claims that the trial court erred in imposing a greater sentence following his conviction by a jury than was imposed pursuant to a sentence bargain following his plea of guilty. We disagree.

While originally pleading guilty, defendant explained what happened:

> *"The Court:* What happened?
> *"The Defendant:* I invited him into the house, your Honor, and we had a hassle and we were fighting, your Honor, and I strangled him."

But, after defendant's jury conviction, the second trial judge stated the following:

> "Now. Judge Evans only had one sentence. 'We were fighting and I strangled him.' That is all he had. I had all the other evidence to suggest all sorts of sadistic acts; sexual acts, strangulation, notes that were written suggesting torture to the victim, the fact that there was a jury that found no mental illness in Mr. Mazzie and, under those circumstances, the court does not feel constrained or in any way under any legal obligation to follow the sentence that was imposed by Judge Evans. There are so many reasons that the other judge did not have in his possession at that time or in his knowledge.
>
> "So, since this court heard this case from the beginning and has heard all the circumstances that were not known to the other judge, the court has to use its own discretion and give a sentence this court feels is in keeping with the evidence this court heard. I don't believe I can sentence Mr. Mazzie because of what another judge did. He was not similarly knowledgeable about the facts and circumstances of this case."

The Michigan Supreme Court in *People v Payne,*

386 Mich 84; 191 NW2d 375 (1971), *rev'd on other grounds* 412 US 47; 93 S Ct 1966; 36 L Ed 2d 736 (1973), interpreted *North Carolina v Pearce,* 395 US 711; 89 S Ct 2072; 23 L Ed 2d 656 (1969), as requiring that the "identifiable conduct" of a defendant that a sentencing judge may rely upon in imposing a more severe sentence must have occurred "after" the first sentence. This interpretation was wrong as evidenced in *Wasman v United States,* — US —; 104 S Ct 3217; 82 L Ed 2d 424 (1984). In *Wasman,* the Court said *Pearce* did not prevent consideration of criminal acts committed prior to the original sentencing. The *Wasman* Court noted that *Pearce* is not without its ambiguities, quoting the following language from *Pearce:*

"A man who is retried after his first conviction has been set aside may be acquitted. If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed. * * *

"* * * A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in light of *events* subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conducts, and mental and moral propensities.' *Williams v New York,* 337 US 241, 245 [69 S Ct 2072; 93 L Ed 1337 (1949)]. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." 395 US 722-723 (emphasis added).

The *Wasman* Court further stated:

"We conclude that any language in *Pearce* suggesting that an intervening conviction for an offense committed prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the

*Pearce* opinion as a whole." — US —; 104 S Ct 3225; 82 L Ed 2d 435.

In the two cases before the Court in *Pearce* there was no asserted explanation or justification for the heightened sentence. This case, on the other hand, squarely presents information that came to the judge's attention from evidence adduced at the second trial itself, which may be relied upon by a sentencing authority to justify an increased sentence after retrial.[2]

*Wasman* concluded:

"We hold that after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." — US —; 104 S Ct 3225; 82 L Ed 2d 435-436.

In this case, the event that occurred subsequent to the original sentencing proceedings was information that came to the attention of the second sentencing judge from evidence adduced at defendant's second trial. Accordingly, this Court is convinced that vindictiveness played no part in defendant's increased sentence. Any presumption thereof has been rebutted. Here, as in *Wasman,* the trial judge carefully explained proper reasons for imposing the greater sentence.[3]

The kidnapping conviction is vacated.

[2] Compare, *People v Newman,* 107 Mich App 535, 549; 309 NW2d 657 (1981). (Analyzed in Judge BRONSON's opinion but constituting the unanimous majority position on the sentencing issue.)

[3] Compare, *Colten v Kentucky,* 407 US 104; 92 S Ct 1953; 32 L Ed 2d 584 (1972), where the Court said a stiffer sentence after reversal and reconviction is allowable if imposed by a different Court after a *de novo* trial.

The conviction and sentence for second-degree murder is affirmed.

Affirmed in part; reversed in part.

V. J. Brennan, J., concurred.

R. B. Burns, P.J. *(dissenting).* Defendant was charged with premeditated murder, felony murder, and kidnapping. MCL 750.316; MSA 28.548, MCL 750.349; MSA 28.581. He pled guilty but mentally ill to murder in the second degree, MCL 750.317; MSA 28.549, and was sentenced to a term of 25 to 50 years in prison pursuant to a sentence bargain. The prosecution, as part of the bargain, dismissed the premeditated murder, felony murder and kidnapping counts. Defendant filed a motion for leave to file a delayed motion for new trial in August, 1981, alleging that the trial court did not comply with GCR 1963, 785.7 in several particulars. In October, 1981, defendant was granted a new trial. At his new trial, defendant was tried and convicted of second-degree murder and kidnapping and sentenced to 75 to 150 years on the second-degree murder count and life on the kidnapping count. Defendant appeals. I would reverse.

On appeal, defendant raises four issues.

First, he claims that the trial court erred in imposing a greater sentence upon him following his conviction by a jury than was imposed pursuant to a sentence bargain following his plea of guilty.

While pleading guilty, defendant explained what happened:

*"The Court:* What happened?

*"The Defendant:* I invited him into the house, your Honor, and we had a hassle and we were fighting, your Honor, and I strangled him."

The trial judge stated at sentencing:

"Now. Judge Evans only had one sentence. 'We were fighting and I strangled him.' That is all he had. I had all the other evidence to suggest all sorts of sadistic acts; sexual acts, strangulation, notes that were written suggesting torture to the victim, the fact that there was a jury that found no mental illness in Mr. Mazzie and, under those circumstances, the court does not feel constrained or in any way under any legal obligation to follow the sentence that was imposed by Judge Evans. There are so many reasons that the other judge did not have in his possession at that time or in his knowledge.

"So, since this court heard this case from the beginning and has heard all the circumstances that were not known to the other judge, the court has to use its own discretion and give a sentence this court feels is in keeping with the evidence this court heard. I don't believe I can sentence Mr. Mazzie because of what another judge did. He was not similarly knowledgeable about the facts and circumstances in this case."

In *People v Payne,* 386 Mich 84; 191 NW2d 375 (1971),[1] the Michigan Supreme Court interpreted *North Carolina v Pearce,* 395 US 711; 89 S Ct 2972; 23 L Ed 2d 656 (1969), as requiring that the "identifiable conduct" of the defendant that a sentencing judge may rely upon in imposing a more severe sentence must have occurred "after" the first sentence. The trial judge erred by increasing the defendant's sentence. Judge Townsend's expressed reasons for imposing a harsher sentence all relate to the facts adduced at trial relating to defendant's heinous crime that were not known by the prior sentencing judge. The record of the second sentencing does not disclose "objective infor-

---

[1] *Payne* was reversed on the basis that *North Carolina v Pearce* should not be applied retroactively. *Michigan v Payne,* 412 US 47; 93 S Ct 1966; 36 L Ed 2d 736 (1973). However, we do not have a question of retroactivity in the present case.

mation concerning identifiable conduct on the part
of defendant occurring after the time of the origi-
nal sentencing proceeding". *Payne, supra,* p 97.

Next, defendant claims that the trial court erred
in permitting the reinstatement of a kidnapping
charge after it had been dismissed pursuant to a
plea agreement.

In *People v McMiller,* 389 Mich 425, 431; 208
NW2d 451 (1973), the Court stated:

"As we have seen, for *policy reasons* we forbid adver-
sary procedure to expose a person to conviction for a
higher offense when the independent fact finder has
chosen to find him guilty of a lesser offense." (Emphasis
in original.)

In *Mikowski v Grand Traverse Sheriff,* 52 Mich
App 66, 70; 216 NW2d 603 (1974), this Court
stated:

"While the Court in *McMiller* did, indeed, use the
terms "higher offense" and "lesser offense", we think
the Court in using those terms was not speaking only of
the possible penalty which could be imposed. The public
policy enunciated in *McMiller* was that once the prose-
cutor has determined that the ends of justice would be
served by a plea to any charge arising out of a single
transaction, the accused shall not thereafter be called
upon to answer to any other charge that arises out of
that transaction which will either subject him to a
higher penalty or cause him to meet any additional
elements of proof. In fact the Court explicitly indicated
that the accused shall be 'tried on the charge to which
the plea was offered'."

On the basis of the rule adopted in *McMiller*
and *Mikowski,* the defendant's kidnapping convic-
tion must be set aside.

Defendant also claims that the trial court erred

in its instruction concerning legal insanity. The trial judge instructed the jury:

"Now legal insanity means that because a person is mentally ill, he cannot appreciate that the acts which he is doing are wrong *and* that he cannot conform his conduct to the requirements of the law. Now there are two things that are required for mental,—there are two things that are required for legal insanity. The two things are that the person, because of mental illness, cannot appreciate that the acts that he is doing are wrong. *In addition to that,* knowing that the act is wrong, he cannot help himself, he cannot conform his conduct to the requirements of the law." (Emphasis added.)

Under this definition, defendant is insane if (a) he cannot appreciate the wrongfulness of his conduct and (b) he cannot conform his conduct to the requirements of the law. Since both (a) and (b) are necessary to find defendant insane, the prosecution need only negate (a) or (b) to establish defendant's sanity. This is an incorrect statement of the law.

In *People v Gasco,* 119 Mich App 143, 144-145; 326 NW2d 397 (1982), *lv den* 414 Mich 951 (1982), the Court was confronted with the following instruction which was taken from CJI 7:8:02A as it was at that time:

" 'A person is also legally insane, if, as a result of mental illness or mental retardation, that person in that situation and in his condition lacked substantial capacity or ability to conform his conduct to the requirements of the law which he is charged with violating.

\* \* \*

" 'Correspondingly, a person is legally sane if, despite mental illness or mental retardation, that person possesses substantial capacity to appreciate the wrongfulness of his conduct *or* to conform his conduct to the

requirements of the law he is charged with violating.'
(Emphasis added.)"

This Court ruled that:

"While the CJI definition of legal insanity correctly
states the law, the CJI definition of legal sanity is
erroneous. The court's instructions on legal sanity allow
the jury to find defendant criminally responsible if it
concluded that: (a) he knew the difference between right
and wrong; or (b) he could conform his conduct to the
requirements of the law. In fact, pursuant to MCL
768.21a(1); MSA 28.1044(1)(1), defendant would be le-
gally sane only if both (a) and (b) were true. CJI
7:8:02A, and the trial court, should have used 'and'
instead of 'or' in the definition of legal sanity."

The trial court in this case may well have used
CJI 7:8:02A before it was corrected on the basis of
the *Gasco* decision. Expert witnesses testified in
support of defendant's insanity defense. The im-
proper instruction cannot be deemed harmless.

Defendant's last claim of error contests the suffi-
ciency of evidence presented at trial to support his
conviction of kidnapping. In my opinion there was
sufficient evidence to support the conviction.

I would reverse and remand for new trial.