# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MICHAEL ANTHONY TERRELL, JR.,

Defendant-Appellant.

UNPUBLISHED
November 10, 2015

No.  323201
Oakland Circuit Court
LC No.  2013-248508-FC

Before:  SAWYER, P.J., and K. F. KELLY and FORT HOOD, JJ.

PER CURIAM.

A jury convicted defendant of two counts of assault with intent to do great bodily harm less than murder, MCL 750.84,[1] and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b.  The trial court sentenced defendant to two concurrent prison terms of 80 months to 10 years each for the assault convictions, to be served consecutively to two concurrent two-year terms of imprisonment for the felony-firearm convictions.  Defendant appeals as of right.  We affirm.

Defendant's convictions arise from shootings that occurred at the Town Liquor store in Royal Oak Township early on June 9, 2013.

## I.  POST-ARREST SILENCE

Defendant first argues that the prosecutor improperly questioned him about his silence after the police arrested him, thereby denying him a fair trial.  Defendant concedes that there was no objection to the prosecutor's questioning or conduct at trial.  Therefore, this Court reviews this issue for plain error affecting defendant's substantial rights.  *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004).  This standard requires that defendant bear the burden of persuasion "that the prosecutor's questions affected the outcome of the lower court proceedings."  *Id*. at 6.

---

[1] The jury acquitted defendant of original charges of assault with the intent to commit murder, MCL 750.83.

In *People v Clary*, 494 Mich 260, 264-266; 833 NW2d 308 (2013), our Supreme Court summarized as follows the legal principles governing a defendant's invocation of his right to remain silent:

> The Fifth Amendment of the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself . . . ." US Const, Am V. See also Const 1963, art 1, § 17. The Fifth Amendment has been made applicable to the states through the Due Process Clause of the Fourteenth Amendment. Pursuant to *Miranda v Arizona*, 384 US at 444, in order to protect the privilege against compelled self-incrimination during custodial police interrogations, the suspect "must be warned that he has a right to remain silent (and) that any statement he does make may be used as evidence against him . . . ." The United States Supreme Court has held that "the Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence (at trial) or instructions by the court that such silence is evidence of guilt." [Citation omitted.] That is, the Fifth Amendment prohibits using a defendant's failure to take the stand as substantive evidence of guilt. The Court has also held that "(w)hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, (and) that anything he says may be used against him," "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence (at the time of his arrest) to be used to impeach an explanation subsequently offered at trial." *Doyle v Ohio*, 426 US 610, 618–619; 96 S Ct 2240; 49 L Ed 2d 91 (1976) [internal quotation and citation omitted]; see also *People v Borgne*, 483 Mich 178, 186–188; 768 NW2d 290 (2009), aff'd on reh 485 Mich 868 (2009). . . .

> * * *

> *However, the United States Supreme Court has also held that "the use of prearrest silence to impeach a defendant's credibility violates (n)either the Fifth (n)or the Fourteenth Amendment to the Constitution."* [Citation omitted]; *see also People v Cetlinski (After Remand),* 435 Mich 742, 757; 460 NW2d 534 (1990) *("(N)either the Fifth Amendment nor the Michigan Constitution preclude(s) the use of prearrest silence for impeachment purposes.").* Moreover, it has also held that *"(i)n the absence of the sort of affirmative assurances embodied in the* Miranda *warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand."* . . . [Citation omitted; emphasis added.]

See also *People v McGhee*, 268 Mich App 600, 634; 709 NW2d 595 (2005) (observing that a prosecutor may comment on a defendant's "silence before custodial interrogation and before *Miranda* warnings have been given"), and *People v Schollaert*, 194 Mich App 158, 166-167; 486 NW2d 312 (1992) (holding that because the defendant's silence "did not occur during a custodial interrogation situation, []or . . . in reliance on the *Miranda* warnings," it had no constitutional protection under the Fifth and Fourteenth Amendments of the Michigan Constitution).

Defendant conceded that between June 9, 2013, and his arrest in October 2013, he knew that police officers were looking for him, but he made no effort to speak with the police before his arrest. Defendant testified that he had planned to talk to the police and give them the same account of the shooting he offered at trial, but instead opted to "spend[] as much time as" he could with his child, and waited for the police to find and arrest him. It was not improper for the prosecutor to question defendant about his prearrest and pre-*Miranda* silence because these questions did not inquire whether, or elicit that, defendant had remained silent in the face of any custodial accusation by a government official.[2] *Schollaert*, 194 Mich App at 166-167. Furthermore, the prosecutor did not reference in either his closing or rebuttal arguments defendant's opportunity to tell the police his version of events.

Plaintiff agrees that the trial prosecutor subsequently "questioned defendant about his post-arrest, post-*Miranda* silence." The prosecutor specifically referenced defendant's post-arrest and post-*Miranda* silence only once, during the following cross-examination:

> *Q. The night you get arrested . . . .*
>
> * * *
>
> *. . . Detective Sergeant Rebecca McArthur . . . advises you of your right to remain silent, right to have a lawyer present, and right to refuse to answer questions; and you decide to assert your rights and not answer questions. Correct?*
>
> *A. I told them I would cooperate with them if I had a lawyer.*
>
> * * *
>
> *Q.* And at some point you get a lawyer. . . . They're representing you. Right?
>
> *A.* Yes.
>
> *Q.* And even then you didn't tell the story until just this morning; isn't that correct?
>
> *A.* No. . . . I told him the truth. He told me—
>
> *Q.* No. The police, I'm talking about. . . .
>
> *A.* Nobody's coming asking—

---

[2] The prosecutor inquired of defendant concerning his neglect to contact police officers before his arrest, and defendant's pretrial revelation of his version of events only to several relatives, including his father, multiple sisters, and uncles.

* * *

*Q*. . . . [Y]ou talked to your lawyers. It's the police I'm talking about and your opportun—

*A*. The police never questioned me—

* * *

*Q*. My question is, [y]ou had an opportunity to talk to the police, you said you wanted a lawyer; and after getting a lawyer, you never went to talk to the police. Right?

*A*. The police never came to talk to me. No. No. [Emphasis added.]

Plaintiff contends that "[b]ecause defendant opened the door to the questions about his post-arrest, post-*Miranda* silence [by interjecting his desire to have an attorney present], this case falls within the exception permitting impeachment of a defendant's version of his postarrest behavior." The prosecutor cites *People v Allen*, 201 Mich App 98, 103; 505 NW2d 869 (1993), in support of this argument.

In *Borgne*, 483 Mich at 193-196, our Supreme Court recently mentioned, but did not specifically address, the validity of the exception in *Allen*, 201 Mich App at 103, that plaintiff invokes in this case, stating:

*We conclude that the [Doyle] exception was not triggered by this exchange because defendant never testified that he made post-Miranda attempts to explain his story*. Defendant's only testimony regarding an attempt to explain his story was related to his pre-*Miranda* conduct (when he was being escorted to the police car). If the prosecutor had wanted to impeach defendant regarding this pre-*Miranda* silence, *Doyle* would have presented no prohibition. But, for whatever reason, the prosecutor chose not to so impeach defendant. Instead, *the prosecutor repeatedly asked defendant why he did not explain his side of the story after being taken to the precinct and after being given Miranda warnings. The prosecutor also repeatedly made defendant admit that he remained silent during that time*. Finally, the prosecutor used this silence in his closing argument to bolster the contention that defendant's exculpatory story was not credible. None of these uses of defendant's post-arrest, post-*Miranda* silence is supported by defendant's testimony regarding his post-arrest, post-*Miranda* actions. In sum, the *defendant did not open the door to the impeachment exception with his fleeting reference to his failed attempt to tell his story before Doyle was even applicable*. [Emphasis added.]

To counter this conclusion, the prosecution relies on [*Allen*, 201 Mich App at 98]. In *Allen*, the Court stated:

"[D]efendant did not claim to have told the police the same version of his exculpatory story upon arrest. Rather, his claim on redirect examination was that

-4-

the trial was his first opportunity to tell his version of the events. We believe that this case falls within the exception permitting impeachment of a defendant's version of his postarrest behavior. Although defendant's testimony would not have permitted the prosecutor to argue that his postarrest silence was inconsistent with his claim of innocence, it did permit the prosecutor to attempt to discredit defendant's testimony by showing that defendant did have an opportunity before the trial to tell his side of the story. Having raised the issue of his opportunity to explain his version of the events, he opened the door to a full and not just a selective development of that subject. [*Id.* at 103 (citations and quotation marks omitted).]"

Thus, *Allen* extended *Doyle*'s impeachment exception to include not only instances when a defendant is allegedly lying about his post-arrest behavior, but when a defendant is falsely asserting that the trial presented his first opportunity to tell his side of the case.

We do not reach the merits of this extension because the prosecution would not benefit from it in this case. Defendant was arrested in the abandoned building and immediately escorted to a police car. At trial, during direct examination, defendant testified that he unsuccessfully tried to tell his side of the story as he was being escorted to the police car. It was not until he reached the police station that he was given *Miranda* warnings and was interrogated. At that point he invoked his right to silence and, after obtaining counsel, decided to remain silent until trial. Even under Allen's extension of the [Doyle] exception, the prosecution would be incorrect in arguing that defendant opened the door to the impeachment exception by claiming to have tried to tell his story to the arresting officers because there was no door to open at that point—Doyle was not even applicable at that time. Indeed, defendant had only been arrested; he had not been given *Miranda* warnings. Under United States Supreme Court precedent, the prosecutor was free to impeach defendant on his silence before *Doyle* applied, and could have asked why defendant did not tell his side of the story after being put into the police car. . . . *But all the prosecutor's impeachment tactics here related to defendant's silence after he was brought to the precinct and given Miranda warnings.*

Accordingly, we hold that *the impeachment exception did not apply in this case, and, as noted, the general rule in Doyle was violated by the prosecution's use of defendant's post-arrest, post-Miranda silence*. [Emphasis added.]

However, plaintiff incorrectly invokes *Allen*. The analysis in *Borgne*, 483 Mich at 193-196, applies in this case because, although the prosecutor asked defendant an improper question about his post-arrest, post-*Miranda* silence, defendant did not then "*open the door to the impeachment exception with his fleeting reference to his failed attempt to tell his story.*" (Emphasis added.)

To the extent that the prosecutor plainly erred in questioning defendant concerning his post-arrest, post-*Miranda* silence, defendant has not satisfied his burden of establishing that the

-5-

error prejudiced his substantial rights. *Borgne*, 483 Mich at 196-197. The prosecutor specifically asked only one question about defendant's post-arrest, post-*Miranda* silence, and the prosecutor never referenced the post-arrest, post-*Miranda* silence during his closing or rebuttal arguments. *Id*. at 197-198. Thus, the prosecutor did not emphasize that defendant's silence signaled his guilt, or "obviate[d] the prosecutor's need to independently prove that defendant committed the crime." *Id*. at 197-199. The prosecutor also "only referred to defendant's silence under the mistaken belief that defendant had raised the subject in his . . . mention of" why he had not tried to tell the police his exculpatory story. *Id*. at 198. Lastly, the prosecutor introduced ample, "largely consistent, untainted evidence to prove . . . defendant's guilt." *Id*. at 199. Most significantly, Kymtara Stewart testified to the details of the assault both from memory and while viewing a store surveillance video depicting the shooting, the prosecutor admitted a copy of the surveillance video, defendant acknowledged at trial that he fired his gun at Jarrell Bennett, and defendant conceded that he had fired gunshots toward Jamell Bennett. Accordingly, defendant is not entitled to appellate relief.

## II. EVIDENCE OF THREATS

Defendant next argues that the trial court erred in allowing evidence of threats against a prosecution witness, Stewart, where the record was devoid of any evidence linking the threats to defendant. Defendant also argues that the admission of threats by unidentified out-of-court declarants violated his right of confrontation. Defendant did not object at trial to Stewart's testimony about the threats, rendering this issue unpreserved.

In a related assertion, defendant avers that the trial court erred by failing to offer an appropriate jury instruction regarding this evidence. However, the record discloses that the trial court and defendant agreed that defense counsel would draft a proposed cautionary instruction regarding the threats, and that defense counsel later affirmed the jury instructions without the proposed cautionary instruction. Therefore, defendant waived his cautionary instruction request. *People v Kowalski*, 489 Mich 488, 503-504; 803 NW2d 200 (2011).

We have carefully examined the record of the prosecutor's questions to Stewart, which consisted of proper, nonspecific inquiries about whether Stewart heard any threats before her testimony, and if Stewart felt any fear in light of the threats. The prosecutor had a good-faith basis for asking Stewart if she had received any threats relating to her testimony. *People v Noble*, 238 Mich App 647, 660; 608 NW2d 123 (1999). Stewart mentioned having heard threats before her testimony at both the preliminary examination and trial. Stewart also was the sole eyewitness, among a group of many acquaintances around the store early on June 9, 2013, to appear and positively identify defendant as a shooter in court. And Stewart confirmed in a nonspecific fashion that she had heard threats toward her or her child if she testified.

Michigan law recognizes the prerogative of a jury to assess the credibility of the trial witnesses. M Crim JI 3.6(1); see also *People v Coleman*, 210 Mich App 1, 8; 532 NW2d 885 (1995) (observing that "[t]he credibility of a witness is always an appropriate subject for the jury's consideration"). M Crim JI 3.6(3)(f) expressly provides that jurors can think about several questions, including whether any "promises, threats, suggestions, or other influences . . . affected how the witness testified." The use note applicable to M Crim JI 3.6 states in relevant part as follows: "This instruction should be given in every case." In this case, the evidence of threats

toward Stewart for testifying possessed logical relevance toward proving a factor pertinent to her credibility, a matter of consequence at trial. MRE 401; *Coleman*, 210 Mich App at 8 (emphasizing that "[e]vidence of a witness' bias or interest in a case is highly relevant to credibility"). Although evidence linking a threat to the defendant is generally necessary where the evidence is offered to show a defendant's consciousness of guilt, *People v Walker*, 150 Mich App 597, 603; 389 NW2d 704 (1985); *People v Lytal*, 119 Mich App 562, 576-577; 326 NW2d 559 (1982), the evidence was not offered for that purpose. Moreover, defense counsel elicited from Stewart that no threats had arisen from defendant or any of his family members. Accordingly, defendant has not established that admission of this evidence constituted plain error.

Further, because the prosecutor offered the questioning of Stewart regarding threats to illustrate the effect of the threats on her, not for the purpose of establishing the truth of any threatened conduct, no violation of the hearsay rule, MRE 801, or defendant's right of confrontation occurred. *People v Chambers*, 277 Mich App 1, 10-11; 742 NW2d 610 (2007).

## III. UNANIMITY INSTRUCTION

Defendant also challenges the trial court's failure to give a specific unanimity instruction regarding the charge of assault with intent to murder Jamell Bennett or Stewart. Because defendant did not request a specific unanimity instruction and affirmatively approved the final instructions given by the trial court, this issue may be deemed waived. *Kowalski*, 489 Mich at 503-504. But even if the issue was not waived, and it is reviewed under the plain error standard applicable to unpreserved claims of error, *id*. at 505, appellate relief is not warranted.

"A criminal defendant has the right to have a properly instructed jury consider the evidence against him." *People v Rodriguez*, 463 Mich 466, 472; 620 NW2d 13 (2000) (internal quotation and citation omitted). This Court reviews jury instructions as a whole to determine whether error requiring reversal occurred. *People v Bartlett*, 231 Mich App 139, 143; 585 NW2d 341 (1998). Even when somewhat imperfect, jury instructions do not qualify as erroneous provided that they fairly present to the jury the issues to be tried and sufficiently protect the defendant's rights. *People v Knapp*, 244 Mich App 361, 376; 624 NW2d 227 (2001); *Bartlett*, 231 Mich App at 143.

To safeguard a criminal "defendant's right to a unanimous verdict," the trial court must "properly instruct the jury regarding the unanimity requirement." *People v Cooks*, 446 Mich 503, 511; 521 NW2d 275 (1994). The Michigan Supreme Court in *Cooks* explained, in relevant part:

> [A] specific unanimity instruction is not required in *all* cases in which more than one act is presented as evidence of the actus reus of a single criminal offense. The critical inquiry is whether either party has presented evidence that *materially* distinguishes any of the alleged multiple acts from the others. In other words, where materially identical evidence is presented with respect to each act, and there is no juror confusion, a general unanimity instruction will suffice. [*Id*. at 512-513 (emphasis in original).]

The Supreme Court held in *Cooks*:

> [I]f alternative acts allegedly committed by defendant are presented by the state as evidence of the actus reus element of the charged offense, a general instruction to the jury that its decision must be unanimous will be adequate unless 1) the alternative acts are materially distinct (where the acts themselves are conceptually distinct or where either party has offered materially distinct proofs regarding one of the alternatives), or 2) there is reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt. [*Id*. at 524.]

Defendant contests the trial court's reading of a general unanimity instruction. He specifically argues about the second assault count on which he stood trial alleged that he had assaulted "Kymtara Stewart and/or" Jamell Bennett with the intent to commit murder. The jury convicted defendant of the lesser offense of assaulting Stewart "and/or" Jamell Bennett with the intent to inflict great bodily harm. A conviction of assault with the intent to do great bodily harm requires proof of "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great bodily harm less than murder." *People v Brown*, 267 Mich App 141, 147; 703 NW2d 230 (2005) (emphasis, internal quotation, and citation omitted).

The prosecutor presented testimony by Stewart that seconds after defendant shot Jarrell Bennett, defendant turned toward her and fired multiple gunshots in her direction. After watching the store surveillance video, Stewart clarified her belief that defendant had fired gunshots at either her or Jamell Bennett. The surveillance video also depicts that immediately after defendant shot Jarrell Bennett, he fired the same handgun toward Stewart and Jamell Bennett. Defendant did not dispute that he fired two shots at Jamell Bennett. He insisted only that he did so in self-defense, and denied not seeing Stewart in the vicinity when he fired at Jamell Bennett.

We conclude that the general unanimity instruction given here sufficiently protected defendant because the prosecutor based count 3 on identical acts, defendant's firing of gunshots toward alternative victims Stewart and Jamell Bennett, who stood in the same vicinity. *Cooks*, 446 Mich at 524. Nothing in the record materially distinguishes the alternative acts forming the basis of count 3, or defendant's defense concerning count 3. *Id*. And the record otherwise gives rise to no "reason to believe the jurors might be confused or disagree about the factual basis of defendant's guilt." *Id*.

We further conclude that because the general unanimity instruction sufficiently protected defendant's right to a fair trial in light of the evidence and defenses presented, defense counsel was not ineffective for failing to request a unanimity instruction. *People v Solmonson*, 261 Mich App 657, 663-664; 683 NW2d 761 (2004); *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## IV. DEFENSES OF ACCIDENT AND SELF-DEFENSE

Defendant additionally argues that the trial court erred by failing to instruct the jury on the affirmative defenses of accident and self-defense. Defense counsel's affirmative approval of the court's jury instructions waived any substantive claim of instructional error. *Kowalski*, 489

Mich at 505. However, defendant also argues that defense counsel was ineffective for failing to request instructions on these defenses. Specifically, defendant argues that in light of his testimony that Jarrell Bennett grabbed his arm and caused the handgun to discharge accidentally, defense counsel was ineffective for failing to request a jury instruction regarding the defense of accident. And given defendant's testimony that he fired at Jamell Bennett only after Jamell Bennett had started firing gunshots at him, defendant maintains that defense counsel was ineffective for neglecting to request a self-defense jury instruction. Because defendant did not raise an ineffective assistance claim in the trial court, our review of this issue is limited "to mistakes apparent on the existing record." *People v Riley (After Remand)*, 468 Mich 135, 139; 659 NW2d 611 (2003). A convicted defendant's claim of ineffective assistance of counsel includes two components: "First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v Washington*, 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To establish the first component, the defendant must show that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. *Solmonson*, 261 Mich App at 663. To establish prejudice, the defendant must demonstrate a reasonable probability that but for counsel's errors, the result of the proceedings would have differed. *Id*. at 663-664.

M Crim JI 7.03a recognizes that the affirmative defense of accident applies to a charge of assault with intent to do great bodily harm. In *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995), this Court explained the concept of an accident that may preclude a defendant's conviction of a specific intent crime:

> Contrary to the court's final instruction regarding the issue, the defense of accident is a defense to a charge of voluntary manslaughter. . . .

> "Accident" has been judicially defined as

> a fortuitous circumstance, event or happening; *an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens*; *an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence*; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence.

> As is apparent from this definition, when some form of intentional act must be established as an element of the crime, the occurrence of the crime is inconsistent with accident. [Internal quotation and citation omitted; emphasis added.]

We conclude that the record does not reasonably demonstrate that defendant's shooting of Jarrell Bennett came within any of the definitions of an accident. Defendant repeatedly admitted that shortly before the shooting, he became angry at Jarrell Bennett inside the store because Bennett repeatedly blew cigarette smoke in his face, and on leaving the store defendant immediately approached Bennett and struck him with the butt of defendant's .45-caliber handgun. Defendant testified that the gun accidently discharged into Jarrell Bennett's chest after Bennett grabbed defendant's arm while moving the gun away from defendant's head. Defendant acknowledged that the gun had fired into Jarrell Bennett's chest because defendant was then pointing the gun at Bennett and defendant's hand was on the trigger. Defendant denied that the gun had a defect. Irrespective of defendant's characterization of the shooting as accidental, the record does not substantiate that the shooting constituted "a fortuitous circumstance, event or happening;" "an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens;" "an unusual, fortuitous, unexpected, unforeseen or unlooked for event, happening or occurrence;" or any other recognized definition of an accident. *Hess*, 214 Mich App at 37. It follows, therefore, that defense counsel was not ineffective for failing to make a meritless request for an accident instruction. *Snider*, 239 Mich App at 425.

We also conclude that the record does not give rise to a reasonable inference that defendant shot at Jamell Bennett in self-defense. In *People v Guajardo*, 300 Mich App 26, 35; 832 NW2d 409 (2013), this Court summarized the following elements of the affirmative defense of self-defense:

> Under the common law, the affirmative defense of self-defense justified the killing of another person if the defendant honestly and reasonably believes his life is in imminent danger or that there is a threat of serious bodily harm and that it is necessary to exercise deadly force to prevent such harm to himself. In general, *a defendant does not act in justifiable self-defense* when he or she uses excessive force or *when the defendant is the initial aggressor*. [Internal quotations and citations omitted, emphasis added.]

The Michigan Legislature in MCL 780.972(2) also adopted the following relevant affirmative defense of self-defense:

> *An individual who has not or is not engaged in the commission of a crime at the time he or she uses force other than deadly force* may use force other than deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if he or she honestly and reasonably believes that the use of that force is necessary to defend himself or herself or another individual from the imminent unlawful use of force by another individual. [Emphasis added.]

Neither common-law nor statutory self-defense applies in this case. The evidence agreed that defendant acted as the initial aggressor in attacking and shooting Jarrell Bennett, without adequate provocation, and then shooting Bennett. Stewart explained that Jamell Bennett had started shooting at defendant immediately after defendant shot Jamell Bennett's brother, Jarrell

-10-

Bennett. Defense counsel was not ineffective for failing to make a meritless request for a self-defense instruction. *Snider*, 239 Mich App at 425.

## V. SENTENCING

Defendant lastly contests the sentences for his assault convictions. He first avers that the trial court erred in departing from the sentencing guidelines range of 29 to 57 months on the basis of evidence that the guidelines already considered, for neglecting to explain the extent of the sentence departure, and sentencing him on the basis of its finding that the jury should have convicted him of assault with intent to murder Jarrell Bennett. The record does not support these claims. In a supplemental brief, defendant also avers that the trial court violated his right to a jury trial when it improperly engaged in judicial fact-finding to score the relevant offense variables (OVs).

A "sentencing court may exercise its discretion to depart from . . . [a] guidelines range" by imposing a reasonable departure. *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) (Docket No. 149073); slip op at 29. Appellate courts review for clear error "the reasons given for a departure." *People v Smith*, 482 Mich 292, 300; 754 NW2d 284 (2008). Appellate courts review for an abuse of discretion the reasonableness of a sentencing court's grounds for imposing a departure and the departure length. *Lockridge*, ___ Mich at ___; slip op at 29; *Smith*, 482 Mich at 300. A sentencing court "abuses its discretion if the" guidelines departure "imposed falls outside the range of principled outcomes." *Id*.

In *Lockridge*, ___ Mich at ___; slip op at 1-2, the Michigan Supreme Court, relying on *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), held Michigan's sentencing guidelines violative of a "defendant's fundamental Sixth Amendment right to a jury trial" to the extent that the guidelines "*require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range, i.e., the 'mandatory minimum sentence under *Alleyne*,'" 133 S Ct 2151 (emphasis in original). Our Supreme Court held, *Lockridge,* ___ Mich at ___; slip op at 2, that to correct this unconstitutionality, it would amend some portions of Michigan's mandatory sentencing guidelines:

> To remedy the constitutional violation, we sever MCL 769.34(2) to the extent that it makes the sentencing guidelines range as scored on the basis of facts beyond those admitted by the defendant or found by the jury beyond a reasonable doubt mandatory. *We also strike down the requirement in MCL 769.34(3) that a sentencing court that departs from the applicable guidelines range must articulate a substantial and compelling reason for that departure*.

> Consistently with the remedy imposed by the United States Supreme Court in *United States v Booker*, 543 US 220, 233; 125 S Ct 738; 160 L Ed 2d 621 (2005), *we hold* that a guidelines minimum sentence range calculated in violation of [*Apprendi v New Jersey*, 530 US 466; 120 S Ct 2348; 147 L Ed 2d 435 (2000),] and *Alleyne* is advisory only and *that sentences that depart from that threshold are to be reviewed by appellate courts for reasonableness. Booker*, 543 US at 264. To preserve as much as possible the legislative intent in enacting the

guidelines, however, we hold that a sentencing court must determine the applicable guidelines range and take it into account when imposing a sentence. *Id*. [Emphasis added.]

MCL 769.34(3)(a) grants trial courts discretion to depart from a guidelines range, instructs trial courts to state "on the record the reasons for departure," and cautions that the trial court cannot use a defendant's "gender, race, ethnicity, alienage, national origin, legal occupation, lack of employment, representation by . . . counsel, appearance in propria persona, or religion to depart from the appropriate sentence range." Trial courts also cannot premise "a departure on an offense characteristic or offender characteristic already taken into account in determining the appropriate sentence range unless the court finds from the facts contained in the court record that the characteristic" received "inadequate or disproportionate weight." MCL 769.34(3)(b).

We conclude that the trial court acted within its discretion in imposing a reasonable upward departure. The trial court did not clearly err in any of its factual findings. *Smith*, 482 Mich at 300. The trial court also satisfied its responsibility to place on the record the grounds on which it imposed an upward departure with its lengthy explanation from the bench at sentencing. MCL 769.34(3). The court correctly observed that the guidelines did not adequately reflect the circumstances of this case, namely, the evidence that defendant's gunshot caused permanent paralysis to Jarrell Bennett, a young man. The guidelines also did not consider the especially senseless reason defendant offered for attacking Jarrell Bennett—that Bennett had blown cigarette smoke into defendant's face. In conclusion, the trial court acted within its discretion in imposing a reasonable upward departure from the guidelines. *Lockridge*, ___ Mich at ___; slip op at 29.

Defendant also complains that the trial court's "scoring of numerous offense variables required it to find facts beyond those established by" the jury verdict. Defendant did not raise this constitutional argument in the trial court. An unpreserved constitutional challenge to the trial court's judicial fact findings at sentencing is reviewed for plain error affecting the defendant's substantial rights. *Lockridge*, ___ Mich at ___; slip op at 30.

Even assuming that some of the OVs were scored on the basis of facts not found by the jury or admitted by defendant, because the trial court did not rely on the sentencing guidelines range and instead departed from that range, defendant is not entitled to appellate relief. In *Lockridge*, ___ Mich at ___; slip op at 31, our Supreme Court explained:

> Assuming arguendo that the facts necessary to score [the OVs challenged by the defendant] were not established by the jury's verdict or admitted by the defendant, and yet those facts were used to increase the defendant's mandatory minimum sentence, violating the Sixth Amendment, the defendant nevertheless is not entitled to resentencing. Because he received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines (and indeed, the trial court necessarily had to state on the record its reasons for *departing* from that range), the defendant cannot show prejudice from any error in scoring the OVs in violation of *Alleyne*. [Emphasis in original.]

-12-

Accordingly, because the trial court did not rely on the guidelines to impose defendant's sentences, and instead relied on factors not reflected in the guidelines, defendant cannot establish that he was prejudiced by any judicial fact-finding to score the offense variables.

Affirmed.


/s/ David H. Sawyer
/s/ Kirsten Frank Kelly
/s/ Karen M. Fort Hood