PEOPLE v ST CYR

1. HOMICIDE—MURDER—FIRST-DEGREE MURDER—INCLUDED OFFENSES
   —ACCIDENTAL HOMICIDE—INSTRUCTIONS—NEW TRIAL—FAILURE
   TO OBJECT.

   Improper instruction of a jury requires reversal and remand for
   new trial although no objection to the instruction was made by
   counsel at trial where the instruction given had the result of
   completely distorting the meaning of instructions earlier given
   by the trial judge, the instruction given resulted in a misdirec-
   tion of the jury on the requisite intent to sustain a conviction
   of first-degree murder or its included offenses because the
   instruction erroneously focused jury attention upon the state of
   mind of the deceased rather than that of the defendant, the
   instruction also misinformed the jury that defendant could be
   convicted of first-degree murder or its included offenses if the
   *deceased's* actions, as opposed to the defendant's own actions,
   caused the deceased's death, and the instruction had the addi-
   tional effect of precluding jury consideration of defendant's
   theory of accidental homicide.

2. HOMICIDE—MURDER—INSTRUCTIONS—MISCARRIAGE OF JUSTICE—AP-
   PEAL AND ERROR.

   A miscarriage of justice resulted where instructional error hope-
   lessly contaminated the instructions given by a trial court in a
   murder case and fair jury consideration of defendant's guilt or
   innocence under the law was thereby rendered impossible.

Appeal from Court of Appeals, Division 3, Hol-
brook, P. J., and R. B. Burns and Targonski, JJ.,
affirming Baraga, Stephen D. Condon, J. Submit-
ted May 9, 1974. (No. 10 May Term 1974, Docket
No. 54,748.) Decided September 6, 1974.

Albert A. St. Cyr was convicted of first-degree

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 498, 525–534.
[2] 40 Am Jur 2d, Homicide §§ 560–562.

murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *F. Hubert Mather,* Prosecuting Attorney *(Prosecuting Attorneys Appellate Service [Howard C. Marderosian,* Acting Director, and *William P. Weiner,* Special Assistant Attorney General])*, for the people.

*Wisti & Jaaskelainen,* for defendant.

J. W. FITZGERALD, J. Defendant was tried by jury and convicted of first-degree murder, a violation of MCLA 750.316; MSA 28.548. The Court of Appeals affirmed defendant's conviction in an unpublished per curiam opinion.

While defendant raises a number of issues on appeal, we choose to discuss only one, dealing with instruction of the jury by the trial court. We find that improper instruction of the jury requires reversal and remand for new trial.

On the evening of December 20, 1970, defendant Albert St. Cyr and his wife Barbara encountered the deceased, Fred Roth, and his wife Marlene in the Huron Bay Tavern located in Baraga County, Michigan. Prior to their meeting, animosity existed between the parties due to the fact that the Roths had for a period of time concealed two runaway children of defendant and his wife. During the course of a heated discussion between Barbara St. Cyr and Marlene Roth, Marlene Roth disclosed that her husband had had sexual intercourse with Sandra St. Cyr, the 15-year-old daughter of defendant. Shortly thereafter, defendant and his wife departed the tavern. Defendant's wife

became extremely agitated as a result of the disclosure.

Upon arriving at his home, defendant inquired of his daughter and learned that the facts respecting Fred Roth's conduct had been accurately reported. At around 12:30 a.m., defendant called the Baraga County Sheriff to inform him of the rape of his daughter and demanded immediate action against Fred Roth. Not satisfied by the sheriff's response, he informed the sheriff that he was going to the Roth home. The sheriff testified that defendant indicated on the phone that he was going to shoot Fred Roth. Defendant thereupon grabbed a rifle and left by car for the Roth home. He testified that his initial rage cooled during the drive to the Roth home and that he was resolved to hold Fred Roth in custody until the sheriff arrived.

The testimony respecting what occurred in the Roth home upon defendant's arrival is that of defendant and Marlene Roth. Defendant testified that he knocked on the door and received no response. He then opened the door and entered, announcing that he wished to speak to Fred Roth. His actions did succeed in rousing Fred Roth and a confrontation ensued in the kitchen of the Roth home. After an initial grappling for the gun, Marlene Roth's entry into the kitchen caused the parties to separate. She turned on the kitchen light. Fred Roth then pulled out a chair at the kitchen table as if to sit down and asked Marlene Roth to get him some cigarettes. She departed the kitchen in search of the cigarettes only, shortly thereafter, to hear shouting and a gun go off.

By defendant's account, he was momentarily distracted in the kitchen, when he saw his car lights on and realized he had also left the motor

running. During this interval someone, presumably Fred Roth, grabbed the barrel of the gun and the gun discharged killing Fred Roth.

The theories of the defense at trial were insanity and that the shooting was the result of the accidental discharge of defendant's weapon. With respect to the latter theory, defendant requested that the following charge be given by the trial court:

"If you find from the evidence that the weapon of ALBERT A. ST. CYR discharged accidentally then I instruct that you cannot find the Defendant guilty of murder and you must find him not guilty of murder." Defendant's Instruction No. 2.

The trial court declined to give the instruction, commenting that it was "argumentative".[1]

After the trial judge had accurately explained to the jury defendant's theory of the case—that the killing was accidental and therefore excusable homicide—and when the judge was nearing the close of his instructions, he gave the following instructions:

"The defendant in this case, Ladies and Gentlemen, further claims that the gun discharged accidentally. You have heard the evidence in this case and know what the circumstances are, and you should judge from all of the evidence, as I mentioned, the shooting, the alleged scuffling, the defendant's conduct at the time of the shooting, whether or not it was accidental.

"Now there has been mention in this case that after the defendant entered the deceased's dwelling the deceased grabbed at the rifle held by the defendant. I charge you that if you find as a matter of fact that the deceased believed that he had a reasonable cause to

---

[1] The Court of Appeals opinion erroneously reports that the trial court indicated it would give defendant's requested instruction "substantially".

believe his life was in danger, or that he was in danger
of great bodily harm, he had every right to try to
defend himself by grabbing the rifle or by resorting to
such force. The actions of the deceased are to be judged
from the circumstances as they appeared to him at the
time, and the fact that his attempt to protect himself by
grabbing the rifle held by the defendant caused the gun
to fire and kill him does not in any way excuse the
defendant from this offense."

No objection to this instruction was made by de-
fense counsel at trial.

Able counsel for defendant contends, and we
agree, that reversible error was committed in the
giving of the above instruction. Indeed, the in-
struction given had the result of completely dis-
torting the meaning of instructions earlier given
by the trial judge. In the words of defendant's
counsel:

"[T]he trial court [by this instruction] instructed the
jury that they must find the defendant guilty of first
degree murder even if the shooting occurred at [sic] the
result of an accident and regardless of the defendant's
state of mind when the incident occurred. This instruc-
tion is patently wrong.

* * *

"The Defendant contended that he should be found
innocent of the offenses with which he was charged if
the jury should decide, as a matter of fact, that the
deceased caused the weapon to be fired when he grab-
bed the weapon held by the Defendant. This was the
thrust of the trial strategy of defense counsel and this
theory is implicit in the defendant's requested Instruc-
tion No. 2.

"On the other hand, the trial court instructed the
jury that, if the behavior of the deceased was reason-
able under the circumstances [as he perceived them], the
fact that the deceased caused his own death by grasping
the rifle in the hands of Albert St. Cyr would not excuse

Albert St. Cyr of first degree murder or related lesser included offenses."

The instruction given resulted in a misdirection of the jury on the requisite intent to sustain a conviction of first-degree murder or its included offenses because the instruction erroneously focused jury attention upon the state of mind of the deceased rather than that of the defendant. This instruction also misinformed the jury that defendant could be convicted of first-degree murder or its included offenses if the *deceased's* actions, as opposed to the defendant's own actions, caused the deceased's death. As is noted by defendant's counsel, the instruction had the additional effect of precluding jury consideration of defendant's theory of accidental homicide.[2]

---

[2] The second and most offensive paragraph of the quoted instruction is the embodiment of Instruction No. 6, submitted to the trial court by the prosecution. This instruction by its purport was "adapted" from 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), Form 407, p 1285, which states: "If you find from the proofs in the case, and have any reasonable doubt in your minds whether or not the respondent shot _____ for the reason that he believed at the time he fired the shots that his father, _____, was in danger of death, or great bodily harm at the hands of _____, and fired the shots in defense of his father, then you should acquit him and return a verdict of not guilty.

"The right to defend one's self against danger not of his own seeking, is a right which the law guarantees to all men; and the same right which exists to protect one's self exists also for the protection of those dependent upon him such as members of his family. In this case defendant had the same right to protect his father that he would have had to protect himself in a like situation, though the danger was threatened to his father, and not to himself. *If at the time the defendant shot the deceased he had reasonable cause to apprehend* on the part of the deceased a design to do his father great personal injury, and there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and to avert such apprehended danger he shot, and at the time he did so he had reasonable cause to believe it necessary for him to shoot in the way he did, to protect his father from such apprehended danger, then and in that case, the shooting was not felonious, but was justifiable, and you ought to acquit him upon the ground of necessary self-defense. It is not necessary to this defense that the danger should have been actual or real, or that the danger should have been impending and

In *People v Liggett,* 378 Mich 706, 714; 148 NW2d 784 (1967), this Court stated:

"It is settled law of this State that the trial judge should instruct the jury in criminal cases as to general features of the case, define the offense and indicate that which is essential to prove to establish the offense, even in the absence of request. A case may be reversed because the charge omits a legally essential ingredient. *People v. Prinz,* 148 Mich 307 [111 NW 739 (1907)]; *People v. Kanar,* 314 Mich 242, 254 [22 NW2d 359 (1946)]; *People v. Hearn,* 354 Mich 468 [93 NW2d 302 (1958)]. Similarly, without a request, a case may be reversed because of an erroneous or misleading charge as opposed to one which merely omits a pertinent though not legally necessary point. *People v. Mac-Pherson,* 323 Mich 438, 448 *et seq.* [35 NW2d 376 (1949)]; *People v. Guillett,* 342 Mich 1, 7 [69 NW2d 1 (1955)]; *People v. Oberstaedt,* 372 Mich 521, 526 [127 NW2d 354 (1964)]. Defendant has a right to have a properly instructed jury pass upon the evidence. *People v. Visel,* 275 Mich 77, 81 [265 NW 781 (1936)]."

See *People v Townes,* 391 Mich 578; 218 NW2d 136

---

immediately about to follow. All that is necessary is that the defendant had reasonable cause to believe and did believe these facts. But before you acquit on the ground of self-defense you ought to believe that defendant's cause of apprehension for his father was reasonable. You are to determine from all the evidence, whether facts constituting such reasonable cause have been established; and, unless such facts constituting such reasonable cause have been established by the defense in this case, you cannot acquit on the ground of self-defense, *but his actions and conduct are to be judged from the circumstances as they appeared to him at the time,* and, if, from all the evidence in the case there exists in your minds a reasonable doubt whether the respondent did not in fact kill _____ in defense of his father, honestly believing his father's life was in jeopardy, or, that he was in danger of receiving serious bodily injury at the hands of _____, then it would be your duty to render a verdict of not guilty." (Emphasis supplied to show similarities between the trial court's instruction and Form 407.)

This section is inappropriate, first, because defendant's theory of the case was accidental homicide, not self-defense. Even more significant, however, is the fact that the adaptation warps the meaning of the quoted section by focusing on the state of mind of the deceased rather than the indicated state of mind of the defendant.

(1974), quoting the above with approval, and, also, *People v Burkard,* 374 Mich 430; 132 NW2d 106 (1965). Moreover, this Court has recently held, in *People v Pepper,* 389 Mich 317; 206 NW2d 439 (1973), that reversible error was committed where defendant's theory of the case was not presented to the jury and the instructions given on intent were such as to prevent consideration of defendant's theory of the case.

Suffice it to say that the instructional error complained of hopelessly contaminated the instructions given by the trial court. Fair jury consideration of defendant's guilt or innocence under the law was thereby rendered impossible. The result was a miscarriage of justice. See, *i.e., People v Liggett, supra;* and MCLA 769.26; MSA 28.1096.

Reversed and remanded for new trial.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, WILLIAMS, LEVIN, and M. S. COLEMAN, JJ., concurred with J. W. FITZGERALD, J.