PEOPLE v HESS

Docket No. 170778. Submitted March 14, 1995, at Detroit. Decided October 13, 1995, at 9:20 A.M. Leave to appeal denied, 450 Mich —.

Mark D. Hess was convicted by a jury in the Detroit Recorder's Court, Warfield Moore, Jr., J., of voluntary manslaughter. The defendant appealed, alleging error in the jury instructions.

The Court of Appeals *held*:

1. After initially instructing the jury that accident is a defense to charges of first-degree murder, second-degree murder, voluntary manslaughter, and involuntary manslaughter, the trial court committed error requiring reversal in subsequently instructing that accident is not a defense to a charge of voluntary manslaughter. Homicides that include intent as an element are excusable if the killing is accidental. An essential element of voluntary manslaughter is the intent to kill or commit serious bodily harm. Therefore, accident is a defense to a charge of voluntary manslaughter.

2. The trial court did not err in subsequently instructing the jury that accident is not a defense to a charge of involuntary manslaughter. Accident is not a defense to a charge of involuntary manslaughter, which does not require proof of intent to kill or commit serious bodily harm.

Reversed and remanded for a new trial.

MARKEY, J., dissenting, stated that the erroneous instruction that accident is not a defense to a charge of voluntary manslaughter was harmless in view of the jury's implicit finding that the shooting was not accidental.

HOMICIDE — MANSLAUGHTER — DEFENSES — ACCIDENT.

Accident is a defense to a charge of voluntary manslaughter, but not to a charge of involuntary manslaughter; conflicting jury instructions regarding whether accident is a defense to a charge of voluntary manslaughter or a charge of involuntary manslaughter may constitute error requiring reversal even where no objection to the instructions is raised at trial.

REFERENCES

Am Jur 2d, Homicide §§ 54-70, 112.
See ALR Index under Involuntary Manslaughter; Manslaughter.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of Research, Training, and Appeals, and *Janet A. Napp,* Assistant Prosecuting Attorney, for the people.

*Sherry A. McCameron,* for the defendant on appeal.

Before: MARILYN KELLY, P.J., and TAYLOR and MARKEY, JJ.

TAYLOR, J. Defendant appeals as of right his conviction of voluntary manslaughter, MCL 750.321; MSA 28.553. Defendant had been charged with first-degree felony murder, MCL 750.316; MSA 28.548, with larceny as the underlying felony, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). We reverse and remand.

The decedent sustained two gunshot wounds to the left side of his head, one of which was fired from a range of four inches or less. Friends and neighbors of the decedent, although aware that he owned shotguns, had never seen him in possession of a pistol, but defendant was seen in possession of a pistol a week before the homicide. The decedent's house had been ransacked, and his wallet emptied of money. Defendant admitted that he lied to the police when he reported that he came home to find that the decedent, his housemate, had been killed during an apparent burglary or robbery.

The defense theory of accident was based on defendant's testimony at trial that, from all appearances, the decedent was preparing to go on a drinking binge. The decedent had asked defendant

to bring him a beer. After bringing the beer to the
decedent, defendant noticed a pistol lying on the
kitchen table within the decedent's reach. For
safety reasons, defendant took the pistol from the
table and started to carry it away. Defendant
claimed that the decedent grabbed defendant's
arm in an attempt to get the pistol back from
defendant. During the struggle for the gun, it
discharged. Defendant claimed he does not know
whether it was one of his fingers or one of the
decedent's fingers that touched the trigger when
the gun fired, and he claimed he did not intend to
hurt the decedent. Because he was afraid, he
arranged the scene to look like a robbery before
summoning police. On cross-examination, defen-
dant admitted firing the gun twice.

With regard to defendant's theory that the
shooting was accidental, the trial court instructed
the jury:

> Obviously, and let me repeat a thousand times
> over, if you are satisfied that the defendant, it was
> an accident or that it was, indeed, self-defense—
> either one of those, then, ladies and gentlemen,
> there is no crime of murder, first, second, man-
> slaughter, involuntary [sic, voluntary] or involun-
> tary.

After giving detailed instructions on first- and
second-degree murder and voluntary and involun-
tary manslaughter, the court gave another instruc-
tion regarding the applicability of the defense of
accident. Specifically, the court stated:

> Both sides have pointed out, and thank you,
> very much, that I read to you about the defense of
> accidental or involuntary act. That, ladies and
> gentlemen—I said to you it could be one or the
> other since the theory of the defense is that it was

either accidental or if it was done intentionally, it was done in self-defense. *But accidental—the defense of accident is only a defense to murder. So it is not a defense to involuntary or voluntary manslaughter. If you find there is voluntary manslaughter, obviously, that couldn't be an accident.* It is also not a defense to involuntary manslaughter. If you find that there was gross negligence, then there may have been—so the fact that there was an accidental shooting, if you believe that occurred, it cannot be a defense to those two charges. [Emphasis added.]

On appeal, defendant argues that the trial court committed error requiring reversal in instructing the jury that the defense of accident is a complete defense to a charge of murder but not to charges of voluntary or involuntary manslaughter.

At the outset, we note that there was no objection to the trial court's instructions; to the contrary, defense counsel expressed satisfaction with the instructions. Accordingly, the issue was not preserved for appellate review absent manifest injustice. *People v Heflin,* 434 Mich 482, 513; 456 NW2d 10 (1990). As a general rule, this Court is hesitant to reverse the judgment of a lower court because of an error in jury instructions where no objection was raised at trial.

Failure of counsel to object at the trial level precludes immediate correction, and it involves the criminal justice system in needless appeals and delay. Jury instructions must be read and considered as a whole to determine if there is error and, if there is error, it is not grounds for reversal in the absence of objection at trial except upon a showing of manifest injustice. [*People v Owens,* 108 Mich App 600, 608; 310 NW2d 819 (1981).]

Our review of the record convinces us that the

trial court's erroneous instruction regarding the
defense of accident constitutes error requiring re-
versal. Contrary to the court's final instruction
regarding the issue, the defense of accident is a
defense to a charge of voluntary manslaughter.
*People v Newman,* 107 Mich App 535; 309 NW2d
657 (1981). Because the trial court gave both a
correct and an incorrect instruction, we presume
that the jury followed the incorrect charge. *People
v Federico,* 146 Mich App 776, 787; 381 NW2d 819
(1985).

"Accident" has been judicially defined as

> a fortuitous circumstance, event or happening; an
> event happening without any human agency, or if
> happening wholly or partly through human
> agency, an event which under the circumstances is
> unusual and unexpected by the person to whom it
> happens; an unusual, fortuitous, unexpected, un-
> foreseen or unlooked for event, happening or oc-
> currence; an unusual or unexpected result attend-
> ing the operation or performance of a usual or
> necessary act or event; chance or contingency;
> fortune; mishap; some sudden and unexpected
> event taking place without expectation, upon the
> instant, rather than something which continues,
> progresses or develops; something happening by
> chance; something unforeseen, unexpected, unu-
> sual, extraordinary or phenomenal, taking place
> not according to the usual course of things or
> events, out of the range of ordinary calculations;
> that which exists or occurs abnormally, or an
> uncommon occurrence. [*Allstate Ins Co v Freeman,*
> 432 Mich 656, 669, n 8; 443 NW2d 734 (1989),
> quoting *American States Ins Co v Maryland Casu-
> alty Co,* 587 F Supp 1549, 1552 (ED Mich, 1984).]

As is apparent from this definition, when some
form of intentional act must be established as an
element of the crime, the occurrence of the crime
is inconsistent with accident. Those criminal homi-

cides that include intent as one of their elements, are excusable if the killing is accidental. *People v St Cyr,* 392 Mich 605; 221 NW2d 389 (1974); *Owens, supra.*

As stated above, a well-established principle in our jurisprudence is that "homicide is excusable if the death is the result of an accident and the actor is not criminally negligent." *People v Morrin,* 31 Mich App 301, 310; 187 NW2d 434 (1971). Voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool. *People v Fortson,* 202 Mich App 13, 19; 507 NW2d 763 (1993). An essential element of the crime of voluntary manslaughter is the intent to kill or commit serious bodily harm. *People v Delaughter,* 124 Mich App 356, 360; 335 NW2d 37 (1983). Murder and voluntary manslaughter are both homicides and share the element of being intentional killings. However, the element of provocation that characterizes the offense of voluntary manslaughter separates it from murder. *People v Pouncey,* 437 Mich 382, 388; 471 NW2d 346 (1991). Because voluntary manslaughter requires proof of intent, the defense of accident is applicable and the trial court in this case committed error requiring reversal in instructing the jury that it was not. *Newman, supra.* See also *People v Morris,* 139 Mich App 550; 362 NW2d 830 (1984), in which this Court held that the fact that the trial court failed to instruct the jury that accident was a defense to a charge of voluntary manslaughter as well as murder was harmless in light of the fact that the jury convicted the defendant of second-degree murder.

Defendant also asserts that the trial court committed error requiring reversal in instructing the

jury that accident is not a defense to involuntary manslaughter. However, we conclude that because involuntary manslaughter is not an intent crime, accident is not a defense to this offense. When accident is asserted as a defense and a voluntary manslaughter instruction is given by the court sua sponte, the court must also instruct concerning involuntary manslaughter. *People v Jones,* 395 Mich 379; 236 NW2d 461 (1975). Justice requires that instructions be given concerning both offenses in order to give the jury the option of convicting the defendant consistently with the defendant's testimony, evidence, and theory of the case. *People v Richardson,* 409 Mich 126; 293 NW2d 332 (1980); *People v Martin,* 130 Mich App 609; 344 NW2d 17 (1983). That is, "accident" is subsumed within the charge of involuntary manslaughter because the jury must consider whether the defendant's conduct was negligent, careless, reckless, wilful and wanton, or grossly negligent. Accordingly, in order to acquit a defendant in a circumstance where the jury is instructed concerning both murder and manslaughter and the defendant's theory is accident, the jury would have to conclude that the killing was accidental and that the defendant did not act in a criminally negligent manner. *Morrin, supra.* See also *People v Tims,* 449 Mich 83; 534 NW2d 675 (1995).

In this case, the trial court's instructions did not allow the jury to find defendant not guilty of voluntary manslaughter if it found that the gun discharged accidentally. Therefore, the jury could have believed that the shooting was accidental and nonetheless convicted defendant of voluntary manslaughter. The dissent states that "*[h]ad* the jury believed the shooting to be *accidental,* it could not have found the requisite intent for voluntary manslaughter." *Post,* p 41. This is simply a misstate-

ment. On these facts, it is impossible to know whether the jury accepted defendant's theory of accident because the court specifically instructed the jury that accident was not a defense to a charge of voluntary manslaughter. The trial court's erroneous instruction denied the jury the freedom to act according to the evidence and deprived it of an option to convict consistently with defendant's testimony, evidence, and theory. *Richardson, supra.* Consequently, the court's error in instructing the jury cannot be deemed harmless. Defendant's conviction must be reversed and the case must be remanded for a new trial. Given our disposition of this matter, we find it unnecessary to reach the other issues raised.

Reversed and remanded. We do not retain jurisdiction.

Marilyn Kelly, P.J., concurred.

Markey, J. *(dissenting).* After carefully reviewing the jury instructions in context and in their entirety, I disagree with the majority's conclusion that manifest injustice resulted from the trial court's ostensibly giving one correct and one purportedly incorrect jury instruction.

The defense in this case argued in the alternative that the shooting death was either an accident or self-defense. The instructions given to the jury reflected those two defenses. The specific language relied on by the majority to find manifest injustice (despite the defense's approval of the instructions as given) clearly constitutes an explanation of and expansion upon the intent element required for a conviction of murder or voluntary manslaughter. Indeed, despite the trial court's incorrect instruction that accident could not be a defense to voluntary manslaughter, the court appeared to have

stated that if the jury were to find that defendant *intentionally* killed the decedent "obviously, that couldn't be an accident." In other words, no jury could have concluded beyond a reasonable doubt that the defendant *intentionally* killed the decedent if the act were an accident. Certainly, the jury could have so concluded and acquitted defendant of voluntary manslaughter just as it did of murder.

The majority's rationale that in order to "acquit a defendant in a circumstance where the jury is instructed concerning both murder and manslaughter and the defendant's theory is accident, the jury would have to conclude that the killing was accidental and that the defendant did not act in a criminally negligent manner" *ante,* p 39, is precisely the point. *Had* the jury believed the shooting to be *accidental,* it could not have found the requisite intent for voluntary manslaughter. Thus, despite a possible misinterpretation of the trial court's instruction and in view of the correct instructions it did give, the trial court's instructions were far more likely than not to have been harmless error in view of the jury's finding of intent, and in any event, did not result in manifest injustice. That is, inherent in the jury's decision is the fact that it believed beyond a reasonable doubt, that the killing was not accidental, i.e., that it was done *intentionally.* Consequently, I would affirm.