# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 15, 2016

Plaintiff-Appellee,

v

No. 328430
Gratiot Circuit Court
LC No. 14-007101-FC

APRIL LYNN PARSONS,

Defendant-Appellant.

Before: BOONSTRA, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

Defendant appeals by right her conviction, following a jury trial, of voluntary manslaughter, MCL 750.321 as a lesser included offense of second-degree murder, MCL 769.36. The trial court sentenced defendant to 8 to 22 ½ years' imprisonment as a habitual offender, second offense, MCL 769.10. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On the night of September 22, 2014, defendant stabbed William "Robbie" Sawyer, the man with whom she lived and who was the father of her two-year-old daughter. The knife punctured one of Sawyer's lungs and his heart, resulting in his death. The couple, who were both intoxicated,[1] had been arguing in the kitchen of their home while defendant was cutting peppers and tomatoes with a knife. Sawyer was upset about a Facebook message that defendant had received from another man, and he allegedly pushed defendant from behind during the argument. In her first two interviews with the police, defendant asserted that she had turned around with the knife in hand and stabbed Sawyer without meaning to do so. In a third interview, defendant asserted that she had lost her footing while she turned, which had caused

[1] Breath tests performed on defendant after she was arrested on September 22 revealed a blood alcohol level of .14. Post-mortem toxicology testing on Sawyer determined that he had marijuana and a prescription pain reliever called Tramadol in his system at the time of death, as well as a blood alcohol level of .194.

-1-

her and Sawyer to fall down together, resulting in the stabbing. Defendant's statements in her interviews with the police were introduced into evidence at trial.

Defendant's teenage daughter was in the living room when the stabbing occurred. Although she could not see what happened, she testified that both defendant and Sawyer were intoxicated during the argument. Both the prosecution and defendant presented medical expert witnesses regarding the knife wound. The prosecution's expert testified that the knife wound was five inches deep, while blade of the knife used to stab the victim measured four and 9/16 inches. That the depth of the wound exceeded the length of the blade could have resulted, he testified, from the insertion of the knife to its handle and then from pushing harder to insert it even deeper. However, the expert agreed that there were no markings around the wound to indicate that the handle of the knife had hit the wound area. Defendant's expert testified similarly, and opined that the slightly longer wound was caused by the breathing of the victim during the stabbing and that, because the knife had only passed through soft tissue, it would not have taken significant force to stab the victim in such a manner.

The trial court instructed the jury on second-degree murder, voluntary manslaughter, and involuntary manslaughter. It also instructed the jury that voluntary manslaughter requires an intentional act by a defendant and that "accident" is a defense to a charge of voluntary manslaughter. The trial court also instructed the jury on self-defense and that such a defense is available to a charge of voluntary manslaughter. The jury convicted defendant as described above. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the evidence adduced by the prosecution was insufficient to convict her of voluntary manslaughter. We disagree. We review de novo a defendant's challenge to the sufficiency of the evidence. *People v Cline*, 276 Mich App 634; 642, 741 NW2d 563 (2007). When reviewing a challenge to the sufficiency of the evidence, this Court reviews "the evidence in a light most favorable to the prosecutor to determine whether any trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." *People v Robinson*, 475 Mich 1, 5; 715 NW2d 44 (2006). "Circumstantial evidence and reasonable inferences therefrom may be sufficient to prove all the elements of an offense beyond a reasonable doubt." *People v Schumacher*, 276 Mich App 165, 167; 740 NW2d 534 (2007). Any conflicting evidence must be resolved in favor of the prosecution. *People v Terry*, 224 Mich App 447, 452; 569 NW2d 641 (1997). "Questions of credibility are left to the trier of fact and will not be resolved anew by this Court." *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

"Manslaughter is an inferior offense of murder because manslaughter is a necessarily included lesser offense of murder." *People v Mendoza*, 468 Mich 527, 533; 664 NW2d 685 (2003). Second-degree murder requires the prosecution to show: "(1) death, (2) caused by defendant's act, (3) with malice, and (4) without justification." *Id*. 534. Manslaughter is simply "murder without malice." *Id*. Thus, "the element distinguishing murder from manslaughter— malice—is negated by the presence of provocation and heat of passion," and "the elements of voluntary manslaughter are included in murder, with murder possessing the single additional

-2-

element of malice." *Id*. at 540. Therefore, "to show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id*. at 535. "Provocation is not an element of voluntary manslaughter;" it is "the circumstance that negates the presence of malice." *Id*. at 536. "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason." *People v Pouncey*, 437 Mich 382, 389; 471 NW2d 346 (1991). "[T]he provocation must be adequate, namely, that which would cause the reasonable person to lose control." *Id*. "The determination of what is reasonable provocation is a question of fact for the factfinder." *Id*. at 390.

It is undisputed that Sawyer died because of the stab wound inflicted by defendant. The question is whether the prosecution demonstrated that defendant acted in the heat of passion caused by adequate provocation without a lapse of time to control her passion. Viewing the evidence in the light most favorable to the prosecution, we conclude that it was sufficient to establish voluntary manslaughter.[2] Defendant's statements indicated that Sawyer shoved her from behind while they were arguing about the Facebook message she had received from another man. While there was no direct testimony from defendant about her state of mind, the "[c]ircumstantial evidence and reasonable inferences therefrom," *Schumacher*, 276 Mich App at 167, would have allowed the jury to determine that defendant had been adequately provoked by Sawyer's suggestions of infidelity coupled with his act of shoving defendant. The same evidence would also have allowed a reasonable inference that defendant acted in the heat of passion when she turned and stabbed Sawyer. Additionally, defendant's own statements support the inference that there was no lapse in time to control her passion, because her statements to the investigator indicated that she turned and stabbed defendant immediately after he shoved her. Thus, when viewed in the light most favorable to the prosecution, the circumstantial evidence and reasonable inferences therefrom were adequate to establish voluntary manslaughter beyond a reasonable doubt.

Nonetheless, defendant argues that there was insufficient evidence to overcome her claim of self-defense. Once a defendant introduces evidence of self-defense, "the prosecutor bears the burden of disproving it beyond a reasonable doubt." *People v Roper*, 286 Mich App 77, 86; 777 NW2d 483 (2009), quoting *People v Fortson*, 202 Mich App 13, 20; 507 NW2d 763 (1993). "In Michigan, the killing of another person in self-defense is justifiable homicide if the defendant honestly and reasonably believes that his life is in imminent danger or that there is a threat of serious bodily harm." *People v Heflin*, 434 Mich 482, 502; 456 NW2d 10 (1990); see also MCL 780.972(1)(a) (providing that a person may use deadly force against another if the person "honestly and reasonably believes that the use of deadly force is necessary to prevent the

---

[2] Defendant does not directly challenge the establishment of the elements of voluntary manslaughter under a sufficiency of the evidence standard. Instead, she contends that the prosecution failed to prove that the stabbing was not an accident or done in self-defense. Nevertheless, discussing the elements of voluntary manslaughter demonstrates that the prosecution offered sufficient evidence to disprove the asserted defenses.

imminent death of or imminent great bodily harm to himself or herself or to another individual"). In this case, defendant's own statements in her interviews with the police negate her claim of self-defense. "A finding that a defendant acted in justifiable self-defense necessarily requires a finding that the defendant acted intentionally, but that the circumstances justified his actions." *Heflin*, 434 Mich at 503. Self-defense is a defense to an *intentional* homicide. See *People v Riddle*, 467 Mich 116, 127-128; 649 NW2d 30 (2002); *People v Wilson*, 194 Mich App 599, 602; 487 NW2d 822 (1992). But in defendant's recorded interviews, she repeatedly asserted that she did not intend to stab Sawyer, and characterized the stabbing as an accident. Viewed in the light most favorable to the prosecution, defendant's statements therefore negate her claim that she acted in self-defense. Additionally, "[t]he necessity element of self-defense normally requires that the actor try to avoid the use of deadly force if he can safely and reasonably do so, for example by applying nondeadly force . . . ." *Riddle*, 467 Mich at 119. "[A]n act committed in self-defense but with excessive force . . . does not meet the elements of lawful self-defense." *Heflin*, 434 Mich at 509. In this case, the jury could have properly concluded from the evidence, beyond a reasonable doubt, that defendant's fatal knife attack in response to Sawyer's conduct constituted excessive force. Although Sawyer may have precipitated the physical altercation, the evidence at trial indicated that he was unarmed; yet defendant responded to his unarmed shoving action by stabbing him with at least the entire length of the blade of the knife she was holding, piercing one of his lungs and his heart. Viewed in the light most favorable to the prosecution, the evidence at trial thus was sufficient to disprove beyond a reasonable doubt defendant's claim of self-defense.

Defendant also contends that the prosecution did not disprove that the stabbing was an accident. "[T]he defense of accident is a defense to a charge of voluntary manslaughter." *People v Hess*, 214 Mich App 33, 37; 543 NW2d 332 (1995). The defense of accident has been defined in part as "an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency; fortune; mishap; some sudden and unexpected event taking place without expectation . . . ." *Id.* (citation omitted). We conclude that the prosecution presented sufficient evidence for the jury to conclude that the stabbing was not accidental. Both a sheriff's deputy and a state trooper testified that they recalled defendant sobbing, " 'why did you make me do it, Robbie, why did you make me do it.' " This statement, viewed in the light most favorable to the prosecution, could give rise to a reasonable inference that defendant took action intentionally rather than accidentally. Further, although the opinions of two medical experts differed somewhat regarding the amount of force necessary to inflict the wound, both experts testified that at least the full length of the knife's blade was inserted into Sawyer's body. "[B]ecause it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind, which can be inferred from all the evidence presented." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

We hold that the prosecution introduced sufficient evidence at trial to support defendant's conviction of voluntary manslaughter.

## III. GREAT WEIGHT OF THE EVIDENCE

Defendant also contends that the verdict was against the great weight of the evidence, and that the trial court therefore erred by denying her post-trial motion for a new trial. We disagree. This Court reviews for an abuse of discretion the denial of a motion for a new trial. *People v Unger*, 278 Mich App 210, 232; 749 NW2d 272 (2008). "A trial court abuses its discretion when it selects an outcome that does not fall within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007).

The test to determine whether a verdict is against the great weight of the evidence is whether "the evidence preponderates heavily against the verdict so that it would be a miscarriage of justice to allow the verdict to stand." *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). "It is the province of the jury to determine questions of fact and assess the credibility of witnesses." *Id*. at 637. "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *Id*. at 647. A trial court may not act as a "thirteenth juror" when determining whether a verdict was against the great weight of the evidence, and "may not attempt to resolve credibility questions anew." *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998). Additionally, in general, "a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009).

Defendant argues that the verdict was against the great weight of the evidence because the prosecution failed to prove that the stabbing was not done in self-defense and that it was not an accident. These arguments are not persuasive for the same reasons set forth with respect to defendant's sufficiency of the evidence challenge. Defendant also argues that the prosecution's medical expert agreed with the defense expert that defendant's account of the incident was consistent with the physical findings regarding the wound. The experts did indeed agree that defendant's account of events was consistent with the physical findings and that it was possible that the handle of the blade did not enter the wound, even though the wound was slightly longer than the blade. But the prosecution's expert also opined that there was "no way to determine [whether the knife handle entered the wound] based on the physical characteristics." In any event, the fact that the experts agreed at trial that defendant's account of the stabbing was not inconsistent with the physical evidence of the wound does not undermine the jury's finding of voluntary manslaughter. Regardless of whether defendant may have deliberately thrust the knife in a manner that would have caused it to be inserted into Sawyer's body more deeply than the blade of the knife itself, the evidence would not predominate against a jury finding that defendant intentionally stabbed Sawyer in the heat of passion, thereby causing his death without justification. "If the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions, the judge may not disturb the jury findings . . . ." *Lemmon*, 456 Mich at 644 (internal quotation marks and citation omitted). We conclude that the trial court did not abuse its discretion by denying the motion for a new trial; the trial court's

-5-

decision was within the range of reasonable, principled outcomes because the evidence did not preponderate heavily against the verdict. *Young*, 276 Mich App at 448.

Affirmed.

/s/ Mark T. Boonstra
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola