*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROGER DEWAYNE WILLIAMS,

      Defendant-Appellant.

UNPUBLISHED
May 26, 2022

No. 353197
Genesee Circuit Court
LC No. 17-041328-FC

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of second-degree murder, MCL 750.317; two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; carrying a concealed weapon, MCL 750.227; and felon in possession of a firearm, MCL 750.224f. The trial court sentenced defendant to a prison term of 34 to 51 years for his conviction of second-degree murder; two years for each felony-firearm conviction; and 60 to 90 months for each of his convictions of carrying a concealed weapon and felon in possession of a firearm. We affirm.

## I. FACTS

This appeal arises out of a fatal shooting that occurred in the early morning hours in a liquor store parking lot. An eyewitness to the shooting, Richard Grace, testified that the night before the incident, he gave defendant a ride as an unregistered Uber driver to several locations. When Grace picked him up, defendant wrapped a gun in a shirt and put it in the trunk of Grace's car. Grace eventually dropped defendant off at the liquor store, at which time defendant retrieved the gun from the trunk of the car. Grace remained in his vehicle in the parking lot of the liquor store, waiting to see if anyone else needed a ride anywhere. Shortly after arriving at the liquor store, defendant exchanged a few words with the victim, and then defendant pulled out a gun and fired several fatal shots at the victim. Defendant ran to Grace's passenger door, with the gun in his hand, and demanded Grace open the door. Grace let defendant in the car and drove off, with defendant firing several more shots from the car as they left. They had driven for approximately

-1-

one mile when defendant jumped out of the car and ran. Grace called 911 and reported what had happened, then returned to the scene.

At trial, Grace and two additional eyewitnesses, William Newell and Keith Jackson, identified defendant as the shooter. Four videos from the liquor store's surveillance cameras captured the shooting, and were admitted into evidence. The prosecution also introduced into evidence a letter that the prosecution asserted was written by defendant and intended for Grace; the letter, which was delivered by an unknown person to Grace while Grace was in jail, referred to Grace by what he testified was his nickname and provided information concerning the case. At the conclusion of the trial, defendant was convicted, as indicated above.

## II. ANALYSIS

### A. IN-COURT IDENTIFICATIONS

Defendant first argues that Newell's and Jackson's in-court eyewitness identifications violated his right to due process. We disagree.

We first note that defendant did not object to either of these in-court eyewitness identifications on the ground raised on appeal, i.e., that they were unduly suggestive. Therefore, this issue is not preserved, *People v Posey*, 334 Mich App 338, 346; 964 NW2d 862 (2020), and is reviewed for plain error affecting defendant's substantial rights, *People v McNally*, 470 Mich 1, 5; 679 NW2d 301 (2004). To show that plain error affected substantial rights a defendant must show "prejudice, i.e., that the error affected the outcome of the lower court proceedings." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

"A defendant's right to due process is implicated if an in-court identification was preceded by a suggestive out-of-court identification." *Posey*, 334 Mich App at 347. "If the trial court finds that the pretrial procedure was impermissibly suggestive, testimony concerning that identification is inadmissible at trial." *People v Kurylczyk*, 443 Mich 289, 303; 505 NW2d 528 (1993). To sustain a due-process challenge to an in-court identification, a defendant must demonstrate that in light of the totality of the circumstances, the pretrial identification procedure was so suggestive that it led to a substantial likelihood of misidentification. *Posey*, 334 Mich App at 347. Even if a defendant meets this burden, an "in-court identification by the same witness still may be allowed if an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303.

However, "[t]he need to establish an independent basis for an in-court identification *only arises* where the pretrial identification is tainted by improper procedure or unduly suggestive comments." *Posey*, 334 Mich App at 349 (quotation marks and citation omitted). Accordingly, if there is no pretrial identification facilitated by law enforcement, there can be no suggestive out-of-court identification, and therefore, the in-court identification is admissible and questions regarding the identification's validity are left for the jury to assess. See *id*. at 359 (stating that

-2-

because there was no pretrial identification of one of the defendants by the witnesses in question, "and thus no suggestive out-of-court identification," the in-court identification of the defendant "was properly left for the jury to assess").

Defendant acknowledges that *Posey* is controlling in this case, but nevertheless argues that the in-court identifications of defendant were inadmissible because they were impermissibly suggestive, the totality of the circumstances did not support their admission, and no independent basis was established for either of these identifications. Defendant's argument is misplaced because like in *Posey*, in this case, there was no evidence that either of these two eyewitnesses participated in any pretrial identification facilitated by law enforcement. Although defendant contends that one of the witnesses participated in a pretrial identification because he looked up defendant on Facebook prior to trial, there was no law enforcement activity and as a result, this does not amount to a pretrial identification facilitated by law enforcement. Because there was no pretrial identification or improper law enforcement activity, and therefore no suggestive out-of-court identification, the credibility of these in-court eyewitness identifications was properly left to the jury. *Posey*, 334 Mich App at 349-351, 359.[1]

Defendant also argues that trial counsel was ineffective for failing to move to suppress these two in-court eyewitness identifications. We disagree.

Because the trial court did not conduct an evidentiary hearing, our review is limited to mistakes apparent from the record. *People v Hughes*, ___ Mich App ___, ___; ___ NW2d ___ (2021) (Docket No. 338030), slip op at 3. Trial counsel is ineffective when "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To demonstrate that trial counsel was ineffective, a defendant must show "(1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018), citing *Strickland*, 466 US at 688. A trial counsel's performance was objectively deficient if it fell below an objective standard of reasonableness. *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007). A defendant is prejudiced if there is a reasonable probability that but for trial counsel's errors, the outcome would have been different. *Randolph*, 502 Mich at 9.

Defense counsel's failure to move to suppress these in-court identifications on the ground that they were unduly suggestive did not constitute objectively deficient assistance because raising an objection would have been futile. See *People v Zitka*, 335 Mich App 324, 341; 966 NW2d 786 (2020) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.") (quotation marks and citation omitted). As discussed above, these in-court identifications were admissible because there was no pretrial identification facilitated by law enforcement. See *Posey*, 334 Mich App at 359. In addition, defendant has failed to demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different had defense counsel moved to suppress these identifications. Substantial additional evidence was presented to demonstrate that defendant committed the charges against him, such as Grace's testimony that defendant was the shooter and video surveillance footage of

---

[1] We decline defendant's request to call for a special conflict panel pursuant to MCR 7.215(J).

the shooting introduced as evidence at trial. Therefore, defendant's ineffective assistance of counsel fails.

## B. AUTHENTICATION OF LETTER

Defendant next argues that the trial court abused its discretion by admitting the letter purportedly given to Grace because there was no proof that defendant wrote this letter. We disagree.

"A trial court's decision to admit evidence is reviewed for an abuse of discretion." *People v Smith*, 282 Mich App 191, 194; 772 NW2d 428 (2009). A trial court abuses its discretion when it "chooses an outcome that falls outside the range of reasonable and principled outcomes." *People v Unger*, 278 Mich App 210, 217; 749 NW2d 272 (2008).

The authentication of evidence is governed by MRE 901(a), which requires that a proponent of an exhibit present "evidence sufficient to support a finding that the matter in question is what its proponent claims." According to MRE 901(b)(4), examples of authentication or identification that satisfy MRE 901(a) are distinctive characteristics and the like, including the evidence's "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances."

If a proposed exhibit is shown to be what its proponent claims it is, the exhibit has been sufficiently authenticated. *People v Berkey*, 437 Mich 40, 52; 467 NW2d 6 (1991). This determination is exclusively for the trial court. *People v Smith*, 336 Mich App 79, 106; 969 NW2d 548 (2021). The trial court must determine whether the "proponent of the evidence has made a prima facie showing that a reasonable juror might conclude that the proffered evidence is what the proponent claims it to be." *Id*. (quotation marks and citation omitted). If the proponent of the evidence satisfies this standard, the evidence is authenticated and may be submitted to the jury, which remains the ultimate fact-finder and determines the reliability and weight of the evidence. *Id*.

In this case, the prosecution sought to admit three letters into evidence. The prosecution claimed these letters were written by defendant and delivered by an unknown individual to Grace while he was in jail on pending charges related to this case, which were later dismissed. On the third day of trial, the admissibility of the letters was addressed and the trial court made a preliminary ruling, subject to the prosecutor's ability to authenticate the letter with testimony, that only one letter was authenticated because the letter's contents and substance, taken in conjunction with other circumstances in the case, contained distinctive characteristics.

The evidence presented at trial demonstrated that the letter at issue was properly authenticated pursuant to MRE 901 because it contained distinctive characteristics relevant to this case that outside parties likely would not be privy to, which indicated that defendant wrote the letter. MRE 901(b)(4). The letter referred to Grace by what he testified was his nickname and referenced the charging history in this case, including that Grace was initially charged as an accessory after the fact. The letter further stated, "They dont got me on no damn camera"; directed "Cuz" to tell Grace that he was the only witness and that he appeared in the store video footage for "all of 5 seconds" with another person who was wearing a hat that obscured his face; and

referred to specific facts and the procedural charging history in the case. The letter concluded, "As long as [Grace] don't testify . . . [w]e straight"; this statement was in alignment with defendant's interest in preventing Grace from testifying because he was a key witness against defendant. These distinctive characteristics indicate that the letter was what the prosecutor claimed it to be: a letter written by defendant. See MRE 901(b)(4). Because a reasonable juror might conclude that the letter was what the prosecutor claimed it to be, see *Smith*, 336 Mich App at 107, the letter was sufficiently authenticated, and the trial court did not abuse its discretion by admitting it.

## C. LESSER INCLUDED OFFENSE INSTRUCTION

Defendant, in a Standard 4[2] brief, argues that the trial court wrongly denied his request to provide a lesser included offense instruction for manslaughter. We disagree.

Questions of law concerning jury instructions are reviewed de novo. *People v Gillis*, 474 Mich 105, 113; 712 NW2d 419 (2006). "But a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion." *Id*. (quotation marks and citation omitted). "Manslaughter is a necessarily included lesser offense of murder." *Id*. at 137. "[W]hen a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence." *Id*. (quotation marks and citation omitted; alteration in original). "Voluntary manslaughter is an intentional killing committed under the influence of passion or hot blood produced by adequate provocation and before a reasonable time has passed for the blood to cool." *People v Hess*, 214 Mich App 33, 38; 543 NW2d 332 (1995).

Because defendant has failed to provide any authority, analysis, or record evidence to support his assertion that an instruction on manslaughter was supported by a rational view of the evidence, this issue has been abandoned. See *People v Matuszak*, 263 Mich App 42, 59; 687 NW2d 342 (2004). Regardless, there was no evidence of a confrontation between the victim and defendant, and therefore no evidence of adequate provocation to support an instruction for voluntary manslaughter. See *Hess*, 214 Mich App at 38. Therefore, the trial court did not abuse its discretion by denying defendant's request for a voluntary manslaughter instruction.

Affirmed.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford

---

[2] Administrative order 2004-6, Standard 4.